1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSEPH JOHNSON,                         No.  2:12-cv-2922 JAM AC P

12                  Plaintiff,

13        v.                                 <u>ORDER</u>

14   E. SANDY, et al.,

15                  Defendants.

16

17        Plaintiff, a state prisoner proceeding pro se, has filed a civil rights pursuant to 42 U.S.C. §

18   1983.  Pending before the court are plaintiff's motions to compel, ECF Nos. 34, 54, which have

19   been opposed by defendants.  Plaintiff has also requested appointment of counsel.

20                          FIRST AMENDED COMPLAINT

21        Plaintiff was placed in the Administrative Segregation Unit (ASU) at California State

22   Prison-Solano (CSP-Sol) on March 27, 2012, pending an investigation.  On March 28, 2012, he

23   received written notice that he was being charged with a rules violation, possession of contraband

24   in the form of a cellular phone.  Verified First Amended Complaint, ECF No.  22 at page 2 & ¶¶

25   1-2. Defendant Sandy was the Senior Hearing Officer at the April 28, 2012 disciplinary hearing

26   at which plaintiff was found guilty.  <u>Id.</u> at ¶ 3.  Plaintiff filed an emergency appeal and sent letters

27   to defendant Warden Swarthout, the Office of Internal Affairs, the Office of the Inspector ////

28   ////

General, the CDCR[1] Ombudsman and the CSP-Sol appeals coordinator, complaining of prejudicial, arbitrary and unprofessional conduct by defendant Sandy at the disciplinary hearing. Id. at ¶¶ 4-6.

On June 20, 2012, plaintiff was taken to the ASU office, where defendant Sandy accused plaintiff of being a "snitch" and screamed at plaintiff about the letters he had written, specifically the one directed to defendant Swarthout. Id. at ¶¶ 8-10. Defendant Sandy instructed that plaintiff be placed inside the ASU holding cell and directed that plaintiff's "snitch ass" be moved out of his assigned cell because she did not want to see him while she was "coming or going to work." Id. at ¶ 11. Plaintiff was not permitted to re-enter his cell. In violation of CDCR policy, ASU staff were instructed to have another inmate pack plaintiff's property, after which plaintiff discovered stamps and documents missing. Id. at ¶¶ 14-16. Plaintiff alleges that he was moved to more restrictive housing in retaliation for having exercised "his right to seek redress against defendant Sandy." Id. at ¶ 13, 17.

On June 22, 2012, at about 9:00 a.m., defendants Cruzen, Cobian and Lavignino informed plaintiff that defendant Sandy wanted to talk to him; plaintiff indicated he did not feel safe in her presence and had nothing to say to her. Id. at ¶¶ 22-23. Defendant Cruzen returned fifteen minutes later and told plaintiff that his assigned case worker, Dr. Farrell, wanted to see him. Id. at ¶ 24. Having been reassured, plaintiff submitted to waist restraints which cuffed his hands at opposite sides. Id. at ¶¶ 25-26. Once plaintiff was outside the housing unit, defendants Sandy, Cobian and Lavignino appeared. Plaintiff turned to defendant Cruzen in fear, asking to speak with his case worker. Id. at ¶¶ 27-28. Defendant Sandy responded by telling defendants Cruzen, Cobian and Lavignino to "bring his ass on, I'm gonna show him who runs shit here!" Id. at ¶ 29.

Plaintiff was pushed and dragged into housing unit no. 9, where defendant Sandy had earlier attempted to have plaintiff moved and where defendant Lavergne appeared to have been waiting for plaintiff. Id. at ¶ 30. Defendant Sandy asked defendant Austin, the control tower officer, if cell no. 101 was opened and instructed defendants Cruzen, Cobian, Lavagnino and

---

[1] California Department of Corrections and Rehabilitation.

Lavergne to remove plaintiff's medically approved shoes. Id. at ¶¶ 31-32. When plaintiff told defendant Sandy that the shoes had been issued by medical staff for a pre-existing injury, she began to scream at plaintiff that "this is what happens to inmates who snitch on me." Id. at ¶¶ 33-34. Plaintiff saw that defendant Austin was pointing a gun at him from outside the window of the control tower. Id. at ¶ 35. Plaintiff, in fear of the use of potentially "deadly force," sat on the floor of the housing unit. Defendants Cobian and Lavergne grabbed plaintiff's legs and defendant Cruzen pushed plaintiff's chest backwards to the floor. Id. at ¶¶ 36-37. Defendants Cobian and Lavergne began stepping on plaintiff's ankles with heavy duty, steel-toed boots, twisting and turning plaintiff's legs to remove plaintiff's medically issued shoes. Id. at ¶¶ 38-39. While plaintiff lay flat on his back, defendant Cruzen dropped his full body weight on plaintiff's chest using his knee. Id. at ¶ 40. Plaintiff lost consciousness but was awakened by defendants Cobian and Lavergne stomping on his ankles and feet, while defendant Cruzen stomped and kicked plaintiff's ribcage, left hand and wrist. Id. at ¶¶ 41-42. When defendant Sandy, who stood nearby throughout, ordered defendants Cruzen, Cobian, Lavagnino and Lavergne to get plaintiff into cell no. 119, they dragged plaintiff across the concrete floor while shoving and kneeing plaintiff's head and body. Id. at ¶¶ 43-44.

When other inmates began protesting the beating, defendant Sandy instructed that plaintiff be placed inside the building's holding cell. Plaintiff was again subjected to the use of excessive force by defendants Cruzen, Cobian, Lavagnino and Lavergne as they dragged him to a holding cell nearby. Id. at ¶¶ 45-47. Defendants Cruzen, Cobian, Lavagnino and Lavergne split plaintiff's chin open by running plaintiff into the holding cell door's corner, face first. Id. at ¶ 48. Plaintiff was locked inside the holding cell for several hours while defendants Sandy, Cruzen, Cobian, Lavagnino, Lavergne and Austin "fabricated" rules violation reports against plaintiff. Id. at ¶ 49.

Plaintiff complained of serious injuries and was eventually escorted to the prison infirmary by defendants Destefano and Hutcheson. Defendant Lahey documented plaintiff's discolored and swollen chest and left hand injuries on a CDC Form 7219. Id. at ¶¶ 51-52. X-rays revealed severe trauma to plaintiff's left hand and chest, and plaintiff was brought to defendant

1    Shadday who conducted a cursory examination but provided no treatment.  Id. at ¶¶ 53-54.

2    Despite plaintiff's severely swollen and fractured left hand ring finger, plaintiff was released and

3    escorted back to cell no. 101 in housing unit no. 9.  Id. at ¶ 55.  Additional injuries suffered by

4    plaintiff included fractured ribs, several cracked or chipped teeth, severe trauma to his face,

5    shoulders, legs, knees, arms, wrist and back; plaintiff also had internal injuries and urinated blood

6    for about thirty-six (36) days.  Id. at ¶¶ 57-58.  Defendants Lahey and Shadday's failure to treat

7    his injuries caused plaintiff more suffering.  Id. at ¶ 56.

8            On June 26, 2012, defendant Sandy ordered plaintiff's removal from his cell.  Sandy

9    informed plaintiff of a call from plaintiff's wife complaining of the use of excessive force on June

10   22, 2012.  Id. at ¶¶ 59-61.  Plaintiff believes defendant Sandy ordered housing unit officers to

11   search plaintiff's cell as a punitive, retaliatory and harassing measure because of the phone call,

12   and also ordered officers to search the cells of neighboring inmates to turn them against plaintiff.

13   The searches resulted in cells that were "completely destroyed."  Id. at ¶¶ 62-64.  That same day,

14   plaintiff was interviewed and videotaped by a Corr. Captain Justice from the Office of Internal

15   Affairs regarding the June 22nd incident and events thereafter, after which plaintiff was re-

16   examined by a non-party registered nurse, Kiesz, who determined that plaintiff's injuries were

17   serious and required immediate treatment.  Id. at ¶¶ 65-67.  Plaintiff alleges that he was then

18   "involuntarily transferred to the California Medical Facility" (CMF) and misled that the overnight

19   transfer to a higher security level institution was for his medical treatment and protection.  Id. at

20   ¶¶ 68-69.  Plaintiff contends that the transfer was solely adverse and actually initiated by Warden

21   Swarthout in retaliation for plaintiff's constitutionally protected activity of filing grievances.  Id.

22   at 70.

23           Plaintiff claims that he has since been confined to segregated housing and has suffered

24   collateral consequences in the form of modified custody, work and privilege group modifications

25   and that he continues to suffer harassment by correctional staff.  Id. at 71-72.  Plaintiff asks for

26   ////

27   ////

28   ////

4

declaratory relief and a form of injunctive relief[2] but primarily seeks compensatory and punitive damages.  Id. at (page) 15.

The court has previously determined that the first amended complaint states cognizable claims for relief against:

- Defendants E. Sandy, J. Cruzen, E. Cobian, K. Lavagnino, Lavergne, J.M. Austin, R. Destefano and H.R. Hutcheson for the use of excessive force and/or failure to protect in violation of the Eighth Amendment;

- Defendants Sandy, Cruzen, Cobian, Lavagnino, Lavergne and Austin for retaliation in violation of the First Amendment in the form of allegedly false disciplinary reports and also for liability under supplemental state law tort claims;

- Defendant Swarthout for First Amendment retaliation in the form of an adverse transfer for plaintiff's having filed grievances and written letters of complaint;

- Defendants Lahey and Shadday for deliberate indifference to a serious medical condition in violation of the Eighth Amendment.

ECF No. 29.[3]

## PLAINTIFF'S MOTIONS TO COMPEL

I.    Standards Governing Discovery

The scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad.  Discovery may be obtained as to "any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  Id.  Discovery may be sought of relevant information not admissible at trial "if the

---

[2] Plaintiff asks that defendant Swarthout be ordered to preserve all material and physical evidence relevant to this case during the pendency of this action (including any appeal).  Of course, when a potential claim has been identified, litigants have a duty to preserve evidence which they "know or reasonably should know is relevant to the action."  In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (internal citations omitted).  No court order is necessary to trigger this duty.
[3] Plaintiff's due process claims were dismissed.  ECF No. 29.

1  discovery appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u>

2  The court, however, may limit discovery if it is "unreasonably cumulative or duplicative," or can

3  be obtained from another source "that is more convenient, less burdensome, or less expensive"; or

4  if the party who seeks discovery "has had ample opportunity to obtain the information by

5  discovery"; or if the proposed discovery is overly burdensome.  Fed. R. Civ. P. 26(b)(2)(C)(i), (ii)

6  and (iii).

7          Where a party fails to answer an interrogatory submitted under Fed. R. Civ. P. 33, or fails

8  to produce documents requested under Fed. R. Civ. P. 34, the party seeking discovery may move

9  for compelled disclosure. Fed. R. Civ. P. 37.  The party seeking to compel discovery has the

10  burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1).  The

11  party opposing discovery then has the burden of showing that the discovery should be prohibited,

12  and the burden of clarifying, explaining or supporting its objections.  <u>Bryant v. Ochoa</u>, 2009 WL

13  1390794 at * 1 (S.D. Cal. May 14, 2009).  The opposing party is "required to carry a heavy

14  burden of showing" why discovery should be denied.  <u>Blankenship v. Hearst Corp.</u>, 519 F.2d 418,

15  429 (9th Cir. 1975).

16          A.  <u>First Motion to Compel</u>

17          On December 19, 2013, plaintiff filed his initial motion to compel responses to his

18  requests for production from defendants Sandy, Cruzen, Cobian, Lavagnino and Lavergne.  ECF

19  No. 34.  The requests for production had been served on October 28, 2013.  <u>Id.</u>  On December 12,

20  2013, the court had granted defendants an extension of time until January 7, 2014, to respond to

21  plaintiff's document production requests.  ECF No 31.  Accordingly, the time for defendants to

22  respond had not expired when the motion was filed.  This motion is therefore denied as

23  premature.

24          B.  <u>Second Motion to Compel</u>

25              1.    <u>Plaintiff's Motion</u>

26          Plaintiff's second motion to compel production of documents was docketed on March 21,

27  2014. ECF No. 54.  The motion fails to include a copy of the requests for production and the

28  responses that plaintiff seeks to put at issue.  ECF No. 54.  Local Rule 250.3 requires the filing of

"that part of the request for production, response or proof of service that is in issue . . . ."

Moreover, this court's Discovery and Scheduling Order specified that discovery requests were not

to be filed "except when required" by specific Local Rules, including L.R. 250.3. ECF No. 53 at

4. Failure to file a discovery motion in compliance with "all applicable rules," the parties were

cautioned, "may result in imposition of sanctions, including but not limited to denial of the

motion." Id. at 5.

 Plaintiff's motion specifies that he seeks compelled production of the following video

recordings:

- A July 6, 2012 (or, alternatively, July 7, 2012) videotaped interview of an "inmate witness" identified as Farris, CDCR # P-38218, conducted by Investigative Services Unit (ISU) Lieutenant S.W. Brown;

- A June 26, 2012 video recording of the plaintiff;

- Video recordings regarding all incidents in which defendants were involved in altercations with inmates.

ECF No. 54.

 Plaintiff indicates that on January 9, 2014, defendants produced a video-recorded

interview taken by a Lieutenant Heist and Sergeant J. Huey that was conducted some three

months after the incident at issue, wherein plaintiff avers he repeatedly asks why a second

interview is being recorded. Id. at 2. Plaintiff states that he was told that "somehow, I.S.U. at

Solano Prison has lost the original video taped interview taken on June 26, 2012." Id.

Nevertheless, plaintiff asserts that the second video recording reveals injuries he sustained during

the incident at issue, such as the boot prints from having been repeatedly kicked by correctional

officers. Id.

 Plaintiff contends further that he has sought by way of interrogatories and requests for

production of documents information regarding "any type of physical altercations" between the

defendants and other inmates. Id. at 3. Plaintiff avers that defendants have objected on grounds

of vagueness. Id. Plaintiff argues that the responses have been deliberately evasive. Id. at 3-4.

Plaintiff seeks unspecified sanctions against defendants for having "blatantly refused to produce

1   key evidence to the plaintiff."

2                          2.      Defendant Sandy's Opposition

3          Defendant Sandy opposes plaintiff's motion on two grounds: 1) that plaintiff has failed to

4   clearly identify which discovery requests are at issue by his motion, and 2) that the motion was

5   filed prior to defendant Sandy's actual response to plaintiff's discovery requests.  ECF No. 55.

6          As the court noted above, plaintiff has failed to include the actual discovery requests and

7   responses at issue.  As to the timing of the motion, it was file-stamped as filed on March 21,

8   2014, and by application of the mailbox rule[4] was actually filed on March 18, 2014.  ECF No. 54.

9   According to defendant Sandy, however, her timely responses to plaintiff's requests for

10  production, sets one through three, and responses to sets one and two of plaintiff's interrogatories,

11  were not served until March 31, 2014.  ECF No. 55, 55-1 (Declaration of Matthew R. Wilson).

12  No reply to this opposition has been filed by plaintiff to challenge defendant Sandy's opposition.

13  Under these circumstances, plaintiff's motion to compel further production or responses from

14  defendant Sandy must be denied as premature.

15                          3.      Opposition by Defendants Austin, Cobian, Cruzen, Destafano, Hutcheson,

16                                  Lahey, Lavagnino, Lavergne, Shadday and Swarthout

17         These defendants have made the effort to provide the specific discovery requests and

18  responses that plaintiff indicates an intent to put at issue.  ECF No. 56.  Defendants have

19  submitted the following:

20         •   Exhibit A, plaintiff's RFP, Set One, propounded upon defendants Cobian, Cruzen,

21             Lavagnino, and Lavergne, and defendants' responses  (ECF No. 56-4 at 2-21);

22         •   Ex. B, plaintiff's RFP, Set Two, propounded upon defendants Austin, Cobian,

23             Cruzen, Destafano, Hutcheson, Lahey, Lavagnino, Lavergne, Shadday and

24             Swarthout, and defendants' responses (ECF No. 56-4 at 23-32);

---

25

26  [4] Houston v. Lack, 487 U.S. 266, 275 76 (1988)(pro se prisoner filing is dated from the date
    prisoner delivers it to prison authorities); Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir.
27  2009), holding that "the Houston mailbox rule applies to §1983 complaints filed by pro se
    prisoners").

28

- Ex. C, Separate responses to plaintiff's Interrogatories, Set One, by defendants Cruzen, Lavignino, Lavergne and Cobian (ECF No. 56-4 at 34-62);

- Ex. D, supplemental responses by defendants Cruzen, Cobian, Lavergne and Lavagnino's, RFP, Set One, No. 13 -  ECF No. 56-4 at plaintiff's interrogatories, Set One, propounded upon defendant Lavagnino (ECF No. 56-4 at 64-67).

Defendants maintain that their responses to the requests for production were complete because plaintiff was provided all the responsive information that they had within their possession, custody or control with respect to Requests for Production (RFP), Set One, Nos. 13, 22 and 24 and by properly objecting to RFP, Set One, Nos. 12 and 36 and RFP, Set Two, No. 15. Id. at 6.  Further, defendants assert that plaintiff's motion should be denied because they properly objected to plaintiff's Interrogatories, Set One, seeking information as to physical altercations defendants had with other inmates or excessive force allegations made against them.  Id.

    4. Requests for Production

      a. June 26, 2012 Interview of Plaintiff

In RFP No. 13, Set One, plaintiff seeks production of his June 26, 2012 videotaped interview.

> Set One, RFP No. 13: Any and all video recording/written statements taken by I.S.U. (L.T.) S. W. Brown, (Captain) [J]ustice on the night of June 26, 2012 in the Solano Parole Board Room (BPT Room).

> Response:
> Defendants object to the request on the grounds that, as phrased, it is vague as to the term "any and all video recording/written statements taken by I.S.U. (L.T.) S. W. Brown, (Captain) [J]ustice on the night of June 26, 2012 in the Solano Parole Board Room (BPT Room)," is overbroad, burdensome, irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence.  Due to the overbreadth, the documents deemed confidential may be responsive, the disclosure of which would create a hazard to the safety and security of the institution, prison officials and inmates, and would violate privacy rights afforded to prison officials and inmates.  Assuming plaintiff is referring [to] any and all video recording/written statements taken by I.S.U. (L.T.) S. W. Brown, (Captain) [J]ustice on the night of June 26, 2012 in the Solano Parole Board Room (BPT Room) as to plaintiff, defendants respond as follows: After a diligent search, no records have been located.  Defendants are continuing to search for responsive documents and will supplement these responses if any

9

1    such documents are located.

2    ECF No. 56-4 at 9.

3            Defendants subsequently supplemented their response, adding the following sentence:

4    "Defendants do not have custody, control or possession over the video recording of plaintiff

5    conducted on June 26, 2012."  ECF No. 56-4 at 66.

6            In describing efforts made to locate the recording, for purposes of opposing this motion,

7    CSP-Sol's use of force coordinator, M. Golding, declares that he or she "learned that the video

8    recording equipment that was used to record all interviews of inmates alleging excessive force

9    had been faulty.  Thus, despite the equipment being turned on during the interview, the equipment

10   either failed to record or it was corrupted and not useable."  ECF No. 56-2 at ¶ 4.  The court is

11   deeply disturbed by this representation, which raises serious concerns of negligence (or worse) in

12   the investigation of inmate excessive force claims and the handling of evidence.  Golding fails to

13   specify the period of time over which faulty equipment was used to record inmate interviews,

14   how and when the faultiness of such equipment was discovered, why the faulty equipment was

15   used specifically for the recording of excessive force-related interviews, and how Golding was

16   able to determine that plaintiff's June 26th interview was among those that were either corrupted

17   or not recorded.

18           Moreover, the undersigned is familiar with two recent cases in which authorities at the

19   same prison discovered long sought-after videos at the eleventh hour, following representations

20   that the videos did not exist or could not be located.  The court takes judicial notice of the records

21   in Evans v. Terrazas, Case No. 09-cv-0292 TLN AC P and Draper v. Rosairo, Case No. 10-0032

22   KJM EFB P. [5]  The late discovered video in Evans was a recording of a cell extraction, while the

23   long missing video in Draper, like the one here, was a recording of an interview conducted with

24   the inmate plaintiff shortly after the incident at issue.  Each of these cases involved excessive

25   force claims at CSP-Sol.

26
     _____
     [5] Judicial notice may be taken of court records.  Valerio v. Boise Cascade Corp., 80 F.R.D. 626,
27   635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981)).

28
                                                    10

1    The court cannot order production of a video tape in the face of a sworn declaration that

2    no such recording exists.  But neither can the court countenance the negligent handling of

3    evidence or potential discovery violations.  Accordingly, although the motion to compel must be

4    denied as to this video-tape, defendants are reminded of their continuing duty to supplement.  If a

5    video recording of the June 26, 2012 interview of plaintiff should be located, notwithstanding

6    defendants' current belief that no such recording exists due to equipment malfunction, it shall be

7    produced to plaintiff forthwith.  Defendants' objections to production of the recording, other than

8    its asserted non-existence, are overruled.  Defendants are cautioned that untimely production of

9    discovery, whether the delay in locating evidence is attributable to the parties, their counsel, or

10   non-party prison officials, may subject defendants to sanctions including but not limited to

11   evidence preclusion.

12                          b.          August 22, 2012 Interview of Plaintiff

13           Set One, RFP No. 22: Any and all video/audio tapes of interviews
             of all witnesses or persons related to this civil suit that were
14           required to be made pursuant to (CDC) policy and rules concerning
             claims of excessive use of force staff complaints whether conducted
15           by outside internal affairs division or any prison staff.

16           Response:

17           Defendants object to this request on the grounds that it seeks
             confidential information the disclosure of which would create a
18           hazard to the safety and security of the institution in that responsive
             documents contain other correctional staff members' names and
19           statements.   In addition, the information requested is part of
             defendants' personnel information and thus is protected from
20           disclosure by the constitutional right to privacy, and various state
             and federal statutes governing the confidentiality of peace officer
21           records, the official information privilege, California Government
             Code section 6254, and California Evidence Code sections 1040,
22           1041, and 1043.   Without waiving these objections, defendants
             respond that after a diligent search, the only video recording located
23           was the use of force interview conducted with plaintiff by prison
             staff at California State Prison-Sacramento on August 22, 2012.
24           Defendants will produce this video recording for plaintiff's review,
             in accordance with plaintiff's housing institution's policy and
25           procedure for viewing video recordings.

26   ECF No. 56-4 at 13-14.

27           Plaintiff has acknowledged that he received a copy of his second interview.  Because

28   defendants have represented that they have produced the only interview located that is responsive

1    to the request, the motion as to this request will be denied.

2          Defendants are again cautioned, however, that they have a continuing duty of diligence as

3    well as a continuing duty to supplement.  As mentioned above, CSP-Sol has a history in this court

4    of representing that diligent searches failed to locate any video recordings when in fact such

5    recordings existed.  The court expects that both defendants and prison officials will exercise

6    maximum diligence in meeting their ethical obligations under the discovery rules, and that any

7    supplemental production will be prompt.  Representations of diligent searching followed by

8    belated disclosure may subject defendants to sanctions.

9                        c.      Reports and Recordings of Witness Interviews

10                                i.      Requests and Responses

11                        •   Set One, RFP No. 24

12          Set One, RFP No. 24: Any and all unredacted version[s] of the
      internal affairs investigation reports of the incident and all
13    video/audio tapes recorded of all witnesses and findings on or about
      defendant.
14

15          In response, defendants object that RFP No. 24 "is compound, duplicative to Request for

16    Production No. 22 in that it seeks 'all video/audio tapes recorded' . . . overly broad, [] irrelevant

17    and not reasonably calculated to lead to admissible evidence."  Defendants object further that the

18    request "seeks confidential information that is part of defendants' personnel information" which

19    is "protected from disclosure by the constitutional right to privacy, and various state and federal

20    statutes governing the confidentiality of peace officer records, the official information privilege,

21    California Government Code section 6254, and California Evidence Code sections 1040, 1041,

22    and 1043."

23          Without waiving these objections, defendants respond that after a
      diligent search, the only video recording located was the use of
24    force interview conducted with plaintiff by prison staff at California
      State Prison – Sacramento and was produced in response to request
25    for production no. 22.   Assuming Plaintiff is requesting all
      documents regarding an investigation into the alleged June 22, 2012
26    incident, included as Attachment VI are all non confidential
      documents in defendants' possession, custody and control.
27    Additional responsive documents are referred to in the attached
      privilege log.
28

1   ECF No. 56-4 at 14-15.

2   • Set Two, RFP No. 15

3   Set Two, RFP No. 15: Any or all "video taped[,]" written reports[]
    taken by (Lt.) S.W. Brown of the witness inmate "Faris" (P-38218)
4   on June 22, 2012 an[d] on July 6, 2012 (9-104-Law) ad seg[.]

5   ECF No. 56-4 at 30.

6       In response, after objecting on grounds of incomprehensibility and vagueness, defendants

7   objected also that:

8           this request[] seeks confidential information that cannot be
            disclosed to protect the safety and security of the institution and the
9           inmates and to maintain the privacy rights of inmates.  Defendants
            further object that the information requested is part of defendants'
10          personnel information and thus is protected from disclosure by the
            constitutional right to privacy, and various state and federal statutes
11          governing the confidentiality of peace officer records, the official
            information privilege, California Government Code section 6254,
12          and California Evidence Code sections 1040, 1041, and 1043.
            Additional confidential responsive documents are listed in the
13          attached privilege log.

14  Id. at 30-31.

15                          ii.     Privilege Log

16      As defendants had not submitted with their opposition a copy of the privilege log(s)

17  referenced in their objections, the court ordered defendants to provide a copy of the privilege logs

18  for the court's review.  ECF No. 59.  The privilege logs were provided on September 2, 2014.

19  ECF No. 60.

20      Under Federal Rule of Civil Procedure 26(b)(5):

21          (A) Information Withheld. When a party withholds information
            otherwise discoverable by claiming that the information is
22          privileged or subject to protection as trial-preparation material, the
            party must:
23
            (i) expressly make the claim; and
24
            (ii) describe the nature of the documents, communications, or
25          tangible things not produced or disclosed--and do so in a manner
            that, without revealing information itself privileged or protected,
26          will enable other parties to assess the claim.

27      The court has now reviewed the logs and finds that they provide insufficient information

28  for the court to determine whether the privileges relied upon are properly invoked.  The privilege

13

1   logs identify the following documents as responsive to RFP No. 24, Set One, or RFP No. 15, Set

2   Two, but entitled to non-disclosure:

3   • Use of Force Crime/Incident Report Critique Package;

4   • Internal Affairs Investigation Report for case no. SOL-SFB-12-06-0158;

5   • CDCR Form 989 Confidential Request for Internal Affairs Investigation;

6   • CDCR 3014-Report of Findings, Inmate Interview.

7       Defendants invoke the official information privilege in relation to the documents

8   identified above.  ECF No. 59; ECF No. 56 at 10-16.  Defendants contend in general terms that

9   the information sought involves defendants' personnel records which are confidential under state

10  and federal statutes.  They also assert the privacy rights of third party inmates and argue that

11  disclosure could compromise the safety and security of the institution.  Id.  Defendants also

12  invoke the protections of various state statutes: California Government Code § 6254, "Exemption

13  of particular records;" California Evidence Code § 1040, which codifies a state "Privilege for

14  official information;" California Evidence Code § 1041, which speaks to a state public entity's

15  "privilege to refuse to disclose" and informer's identity; and California Evidence Code § 1043,

16  which provides the state procedures for, inter alia, seeking disclosure of a peace officer's

17  personnel records.

18              iii.    Standards Governing Privilege

19      Privileges are to be "strictly construed" because they "impede full and free discovery of

20  the truth."  Eureka Financial Corp. v. Hartford Acc. and Indemnity Co., 136 F.R.D. 179, 183

21  (E.D. Cal. 1991).  The Supreme Court has long noted that privileges are disfavored.  Jaffee v.

22  Redmond, 518 U.S. 1, 9 (1996).  "The party asserting an evidentiary privilege has the burden to

23  demonstrate that the privilege applies to the information in question."  Tornay v. United States,

24  840 F.2d 1424, 1426 (9th Cir. 1988).

25      In civil rights cases brought under federal statutes, questions of privilege are resolved by

26  federal law.  Kerr v. U.S. District Court for the Northern District of California, 511 F.2d 192, 197

27  (9th Cir. 1975), aff'd on procedural grounds, 426 U.S. 394 (1976).  Where the complaint alleges

28  both substantive federal and state law claims concerning the same alleged conduct, the federal

14

law of privilege controls.  <u>Agster v. Maricopa County</u>, 422 F.3d 836, 839‑40 (9th Cir. 2005) (internal citations omitted).  "Federal common law recognizes a qualified privilege for official information."  <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027, 1033 (9th Cir. 1990) ("[g]overnment personnel files are considered official information.").  "To determine whether the information sought is privileged, courts must weigh the potential benefits of the disclosure against the potential disadvantages.  If the latter is greater, the privilege bars discovery."  <u>Sanchez</u>, 936 F.2d at 1033-34; <u>see also</u> <u>Martinez v. City of Stockton</u>, 132 F.R.D. 677 (E.D. Cal. 1990).[6]  "The balancing approach of the Ninth Circuit is mirrored in this and other courts' previous determinations that a balancing test is appropriate when the disclosure of law enforcement files in a civil action is at issue."  <u>Doubleday v. Ruh</u>, 149 F.R.D. 601, 609 (E.D. Cal. 1993).

Documents that are a part of the personnel records of officers defending civil rights actions, while containing sensitive information, are within the scope of discovery.  <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 614-15 (N.D. Cal. 1995); <u>Hampton v. City of San Diego</u>, 147 F.R.D. 227, 230‑31 (S.D.Cal.1993); <u>Miller v. Pancucci</u>, 141 F.R.D. 292, 296 (C.D. Cal. 1992).  "State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases."  <u>Kelly v. City of San Jose</u>, 114 F.R.D. 653, 655 (N.D. Cal. 1987).

As to invoking the official information privilege, in order to do so, "[t]he claiming official must 'have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced' and state with specificity the

---

[6] The ten factors include:"(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case." <u>Crawford v. Dominic</u>, 469 F. Supp. at 263) (citing <u>Frankenhauser v. Rizzo</u>, 59 F.R.D. 339, 344 (E.D.Pa.1973)).

rationale of the claimed privilege." <u>Kerr</u>, 511 F.2d at 198.  The party invoking the privilege must

at the outset make a "substantial threshold showing" by way of a declaration of affidavit from a

responsible official with personal knowledge of the matters to be attested to in the affidavit.  <u>Soto</u>

<u>v. City of Concord</u>, 162 F.R.D. 603, 613 (N.D. Cal. 1995).

> The affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

Id.

    In addition, "[t]he asserting party, as in any case where a privilege is claimed, must

sufficiently identify the documents so as to afford the requesting party an opportunity to

challenge the assertion of privilege." <u>Miller</u>, 141 F.R.D. at 300.  In this case, the privilege logs

submitted by the defendants are insufficient to demonstrate that the official information privilege

was properly invoked.  The official information privilege must be formally claimed by "the head

of the department which has control over the matter, after actual personal consideration by that

officer." <u>United States v. Reynolds</u>, 345 U.S. 1, 7-8 (1953).[7]

iv.    <u>Discussion</u>

    CSP-Sol Litigation Coordinator S. Cervantes has submitted a declaration attesting to the

"highly confidential" nature of peace officer personnel documents which are protected by the so-

---

[7] The claim should be made by a person in an executive policy position.  <u>See Reynolds</u>, 345 U.S. at 8 n. 20 ("The essential matter is that the decision to object should be taken by the minister who is the political head of the department, and that he or she should have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced . . ." ) "[T]he information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." <u>In re Sealed Case</u>, 856 F.2d 268, 271 (D.C. Cir. 1988). An official cannot invoke a privilege without personally considering the material for which the privilege is sought. <u>Yang v. Reno</u>, 157 F.R.D. 625, 634 (M.D. Pa. 1994).

1   called "Peace Officer Bill of Rights [POBOR]."  ECF No. 56-1 at ¶¶ 1-2.  Absent a court order,

2   Mr. Cervantes is unable to disclose, or consent to the disclosure of, such records.  Id. at ¶ 2.

3   Declarant Cervantes goes on to explain that inmates 602 complaints that are not categorized as

4   staff complaints are searchable only by the inmate's name.  Id. at ¶ 3.  Complaints accepted by

5   the hiring authority (warden) as staff complaints, on the other hand, are searchable by the name of

6   the staffmember.  Id. at ¶ 4.  Such complaints must be investigated and are considered a personnel

7   document protected under the POBOR.  Id.  Mr. Cervantes avers that the investigation of staff

8   complaints may entail the identification of other inmates as witnesses or sometimes as

9   confidential informants, whose names and statements may be contained in a written report that is

10  part of the investigation.  Id. at ¶ 5.  The statements of other officers may also be included in the

11  report of the investigation.  Id.  Declarant Cervantes states that disclosure of such information

12  may jeopardize the safety and security of inmates and officers, should their version of events

13  differ from that of the complaining inmate.  Id.

14          Mr. Cervantes goes on to caution that disclosure of investigative reports could undermine

15  the investigative process by alerting inmates to the procedures followed in the investigation of

16  staff complaints.  Id. at ¶ 6.  In addition, according to Declarant Cervantes, both regular inmate

17  appeals and those classified as staff complaints can disclose confidential information concerning,

18  for example, an inmate's classification score and medical/psychological conditions.  Id. at ¶ 7.

19  Attachments to appeals can contain such "highly confidential" information as probation reports

20  and details of an inmate's criminal history.  Id.  Release of such information, according to Mr.

21  Cervantes, violates the inmate's privacy rights, possibly the law governing disclosure of medical

22  information and could lead to safety and security concerns if the information is leaked.  Id.

23  Documents that reveal the current or recent location of inmates are also considered confidential

24  and can create safety concerns.  Id. at ¶ 8.  Finally, Mr. Cervantes states that he became aware of

25  Inmate Faris's having been interviewed in the context of plaintiff's 602 grievance against

26  defendants Sandy, Cruzen, Cobian, Lavergne and Lavagnino.  Id. at ¶ 9.  As such, according to Mr.

27  Cervantes, that interview "is subject to the confidentiality and privilege provisions under

28  POBOR" because it is considered part of the staff complaint.  Id.

1   To the extent defendants rely on Mr. Cervantes as the official invoking the official

2   information privilege, his claims of the privilege are insufficiently specific.  His statement of the

3   basis for the claim of privilege for internal investigative reports, inmates' appeals and staff

4   complaints and documents revealing inmate locations are generalized in that there is no indication

5   that he actually reviewed the specific documents sought by plaintiffs.  Even with the submission

6   of the privilege log, it is not clear why simple redactions would not cure any potential danger

7   arising from disclosure.  For example, as to "CDCR Form 989 Confidential Request for Internal

8   Affairs Investigation," the concern regarding disclosure of defendants' full names, social security

9   numbers, dates of birth and hire and the disclosure of other correctional staff members' names

10   could be largely obviated by redacting the personal data.

11   Defendants are correct that RFP No. 15, Set Two (above) suffers from a lack of clarity.

12   However, it can be discerned that plaintiff is seeking videotaped interviews conducted by a

13   Lieutenant Brown of someone plaintiff characterizes as a witness, an inmate Faris, as well as

14   written reports by Lt. Brown concerning his interviews of this inmate and/or written reports by

15   Faris submitted to the lieutenant concerning the subject incident.  Plaintiff does not make it clear

16   why this inmate has relevant testimony, but the litigation coordinator has confirmed that Faris

17   was interviewed about plaintiff's excessive force allegations.  It is reasonable to infer that Faris

18   had information about the June 22 incident, which makes the interview itself and any reports of

19   the interview relevant to plaintiff's claims.  The privilege log submitted by defendants, with its

20   broad objections and boilerplate claims of confidentiality and privacy rights, does not make clear

21   how disclosure of the CDCR 3014-Report of Findings, Inmate Interview could not be produced

22   without redaction, as no information is provided as to what type of data is disclosed in the report.

23   The court will deny without prejudice plaintiff's motion for further production as to RFP No. 24,

24   Set One, and RFP No. 15, Set Two, but defendants must provide a more detailed privilege log to

25   plaintiff and to the court within fourteen days so that the court may finally determine whether any

26   concerns regarding production may not be remedied simply by redaction and/or a protection

27   order.

28

18

d.     Other Complaints And Use of Force Incidents Involving

Defendants

> Set One, RFP No. 12: Any and all formal and informal written complaints (including but not limited to CDCR 602 forms) against any defendants, alleging excessive use of force that occurred prior to (June 22, 2012) to the present (including all written responses, appeals, reports, investigations, and/or correspondence regarding the complaints).
>
> Set One, RFP No. 36: Any and all grievances, complaints, or other documents received by defendants, their agents or supervisors at CSP-Solano concerning mistreatment of inmates by defendants: E. Sandy, J. Cruzen, K. Lavagnino, D. Lavergne, E. Cobain, and any memoranda, investigative files, or other documents created in response to such documents since June 22, 2012 to the present.

ECF No. 56-4 at 8-9, 19-20.[8]

Defendants have refused to produce any documents in response to these requests, invoking institutional safety and security concerns, the privacy rights of both prison officials and inmates, the official information privilege, and the various state statutory grounds previously set forth.  Defendants contend that releasing defendants' personnel file documents, especially to a prisoner, would substantially injure state's prison system "by unnecessarily chilling the free and uninhibited exchange of ideas between staff members within the system, by causing the unwarranted disclosure and consequent drying up of confidential sources, and in general by unjustifiably compromising the confidentiality of the system's records and personnel files."  Opp. at ECF No. 56 at 18, citing Assoc. for Reduction of Violence v. Frank, 734 F.2d 63, 66 (1st Cir. 1984); Williams v. Missouri Bd. of Probation & Parole, 661 F.2d, 697, 700 (8th Cir. 1981) (overruled on another ground by Maggard v. Wyrick, 800 F.2d 195 (8th Cir. 1986)).

With regard to the requests at issue, the court finds that the benefits of disclosure outweigh the disadvantages.  The sought-after information has a high degree of potential significance to plaintiff's case.  In an excessive force case such as this, the relevance and discoverability of officers' disciplinary records, including unfounded complaints and allegations

---

[8] As noted earlier, Set One of plaintiff's RFP's were propounded only upon defendants Cobian, Cruzen, Lavagnino, and Lavergne.

of misconduct, are widely recognized.  See, e.g., Gibbs v. City of New York, 243 F.R.D. 95 (S.D.N.Y. 2007); Frails v. City of New York, 236 F.R.D. 116 (E.D.N.Y. 2006); Floren v. Whittongton, 217 F.R.D. 389 (S.D.W. Va. 2003); Hampton v. City of San Diego, 147 F.R.D. 227 (S.D. Cal. 1993).  Important countervailing institutional and privacy considerations can be adequately addressed by narrowly tailoring the compelled production, providing for redaction of documents, and issuing a protective order to limit use of the materials.

Defendants' objection that an open-ended request such as RFP No. 12 is overbroad and may be unduly burdensome is well-taken.  With respect to RFP No. 12, defendants will be required to produce responsive documentation dating from five years prior to June 2012 through the present.  Plaintiff's motion for production as to RFP Nos. 12 and 36 is otherwise granted.  The information produced shall be redacted to omit personal information, such as social security number, address, etc., and will omit information identifying third parties.  Defendants will be directed to submit a proposed protective order within fourteen days, following the issuance of which defendants will have another fourteen days to provide the requested information.

        5.     Interrogatories

> Set One, Interrogatory (INT) No. 4: During your employment at Solano and (CDC) have you ever had any type of physical altercations with any other inmates.  If so explain.
>
> Response:
>
> Defendant objects to the interrogatory on the grounds that it is vague as to the term "any type of physical altercations," overly broad as to time and subject matter, assumes facts not in evidence, seeks impermissible character evidence, and is not reasonably calculated to lead to the discovery of admissible evidence.  Based on these objections and the vagueness of the term "physical altercation," defendant cannot answer this interrogatory as phrased.

ECF No. 56-4 at 36.

No further response will be required to INT No. 4, which is overbroad.[9]

        Set One, INT No. 5:  During your employment as a (CDC) officer

---

[9] "Physical altercation" can include unwanted contact of a relatively minor nature, such as a simple shove or push.  Only physical altercations significant enough to generate a report by staff are relevant and discoverable, and are addressed by other discovery requests.

have you ever had any 602, complaints filed against you.  If so explain (A) have you ever been accused of "excessive force[?]"

Response:

Defendant objects to the interrogatory on the grounds that it is overly broad as to time and subject matter, compound; seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence; seeks character evidence which is inadmissible; and potentially—to the extent it calls for personnel information—calls for information protected by the official information privilege, California Government Code section 6254, and California Evidence Code sections 1040, 1041, and 1043.  The request also seeks information that may contain confidential and private information about other inmates' medical conditions, custody classifications, and other sensitive information, the disclosure of which would create a hazard to the safety and security of the institution and violated the inmates' right to privacy and confidentiality.  No response will be provided.

ECF No. 56-4 at 36.

To the extent that the answer to INT. No. 5 has not been answered by defendants Cruzen, Lavignino, Lavergne and Cobian on whom it was propounded, the motion is granted and defendants must respond.  Because the interrogatory is compound, however, these defendants need only answer whether and on how many occasions they have been accused of excessive force in a 602 complaint by inmate(s) other than plaintiff.  Objections to this interrogatory are otherwise overruled for the reasons previously addressed.

Discovery is re-opened for purposes of resolving the pending discovery disputes, with a new deadline of October 23, 2014.  The dispositive motion deadline is re-set for January 23, 2015.

### REQUEST FOR APPOINTMENT OF COUNSEL

Plaintiff has requested appointment of counsel.  The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the district court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).

The test for exceptional circumstances requires the court to evaluate the plaintiff's

1   likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in

2   light of the complexity of the legal issues involved.  Palmer v. Valdez, 560 F.3d 965, 970 (9th

3   Cir. 2009) (district court did not abuse discretion in declining to appoint counsel); Wilborn v.

4   Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir.

5   1983).  Circumstances common to most prisoners, such as lack of legal education and limited law

6   library access, do not establish exceptional circumstances that would warrant a request for

7   voluntary assistance of counsel.  Plaintiff claims to have no legal training and to be a participant

8   in the CCCMS level of the mental health program (ECF No. 57 at 3), circumstances not

9   uncommon for indigent plaintiff prisoners.  The legal issues involved in this case do not appear to

10  to be particularly complex.  Although plaintiff contends that his incarcerated and pro se status

11  hinders his ability to investigate the facts and identify witnesses, plaintiff has been able to bring

12  discovery motions.  The court does not at this time find the required exceptional circumstances.

                                    CONCLUSION

14      For all the reasons set forth above, IT IS HEREBY ORDERED as follows:

15      1. Plaintiff's December 19, 2013 motion to compel responses to requests for production

16  of documents (ECF No. 34) is DENIED.

17      2. Plaintiff's March 21, 2014 motion to compel (ECF No. 54) as to defendant Sandy is

18  DENIED WITHOUT PREJUDICE;

19      3. Plaintiff's March 21, 2014 motion to compel further production (ECF No. 54) as to

20  defendants Cruzen, Lavignino, Lavergne and Cobian is GRANTED IN PART and DENIED IN

21  PART as follows:

22          a.  DENIED as to Set One, RFP Nos. 13 and 22;

23          b.  PROVISIONALLY DENIED WITHOUT PREJUDICE as to Set One, RFP

24          Nos. 24, subject to defendants' provision of a more detailed privilege log to plaintiff and

25          to the court within fourteen days, upon which the court may make a final determination;

26          c.  GRANTED as to Set One, RFP Nos. 12 and 36 (with redaction of personal

27          information and subject to a protective order);

28          d.  DENIED as to Set One, INT No. 4;

e.  GRANTED as to Set One, INT No. 5, as limited above;

4.  Plaintiff's March 21, 2014 motion to compel further production (ECF No. 54) as to Set Two, RFP No. 15 propounded upon defendants Austin, Cobian, Cruzen, Destafano, Hutcheson, Lahey, Lavagnino, Lavergne, Shadday and Swarthout is PROVISIONALLY DENIED WITHOUT PREJUDICE but subject to defendants' provision of a more detailed privilege log to plaintiff and to the court within fourteen days upon which the court may make a final determination;

5.  Defendants are to submit a proposed protective order within fourteen days with respect to production that is ordered as to Set One, RFP Nos. 12 and 36;

6.  The deadlines set forth in the February 18, 2014 Discovery & Scheduling Order, ECF No. 53, are hereby vacated; discovery is re-opened to be completed per this order with a new deadline of October 23, 2014.  The dispositive motion deadline is re-set for January 23, 2015.

7.  Plaintiff's May 27, 2014 motion for the appointment of counsel (ECF No. 57) is DENIED.

DATED: September 15, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE