UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH JOHNSON,

          Plaintiff,

    v.

E. SANDY, et al.,

          Defendants.

No. 2:12-cv-2922 JAM AC P

FINDINGS & RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court are defendants' fully briefed motions for summary judgment.[1] ECF Nos. 164, 165, 166.

I.    Procedural History

This case proceeds on plaintiff's first amended complaint. ECF No. 22. Upon screening, the complaint was found to state claims under the Eighth Amendment, First Amendment, and state tort law against defendants Austin, Hutcheson, Swarthout, Lahey, Lavagnino, Lavergne, Shadday, Cobian, DeStefano, Sandy, and Cruzen. ECF No. 29 at 2. After the close of discovery, defendants filed motions for summary judgment. ECF Nos. 105, 106, 124. However, the

---

[1] Defendants Hutcheson, DeStefano, and Lahey also move for dismissal under Federal Rule of Civil Procedure 12(b)(6). ECF No. 166-1 at 21-24.

motions were vacated due to outstanding discovery disputes. ECF No. 155 at 7. After the discovery matters were resolved, defendants were given an opportunity to re-file and re-serve their original motions for summary judgment. ECF No. 163. Plaintiff's request to re-file his motion for summary judgment, which was originally denied as untimely, was denied. ECF No. 173. Defendants' proceeded to re-file their motions, which are now before the court. ECF Nos. 164, 165, 166.

## II.    Plaintiff's Allegations

In his verified, first amended complaint, plaintiff alleges that defendants Austin, Hutcheson, Lavagnino, Lavergne, Cobian, DeStefano, Sandy, and Cruzen violated his rights under the Eighth Amendment by using excessive force against him and/or failing to protect him, and that Sandy, Cruzen, Cobian, Lavagnino, Lavergne, and Austin are also liable for assault and battery and intentional infliction of emotional distress. ECF No. 22 at 7-10, 13-14. Specifically, he alleges that after he filed a grievance against Sandy, she ordered Cobian, Lavergne, Cruzen, and Lavagnino to move him to a more restrictive cell and that when he resisted the move she encouraged them to assault plaintiff, which they proceeded to do. Id. at 4-10. During the assault, defendant Austin was pointing a gun at plaintiff from the control tower and plaintiff feared that his life was in danger. Id. at 8. Sometime after the assault, defendants Hutcheson and DeStefano escorted plaintiff to and from the infirmary. Id. at 10.

Plaintiff also alleges that defendants Lahey and Shadday were deliberately indifferent to his serious medical needs when they refused to treat the injuries he sustained during the assault. Id.

Finally, he asserts that Austin, Swarthout, Lavagnino, Lavergne, Cobian, Sandy, and Cruzen retaliated against him for filing grievances. Id. at 9, 12-14. Swarthout allegedly initiated a retaliatory transfer, while the other defendants fabricated disciplinary reports against plaintiff. Id.

## III.    Motions for Summary Judgment

### A.    Defendants' Arguments

Austin, Hutcheson, Swarthout, Lahey, Lavagnino, Lavergne, Shadday, Cobian, and

2

DeStefano are represented by the Attorney General's Office and have filed a motion for summary judgment. ECF No. 166. Lavergne, Lavagnino, Cobian, and Austin move for summary judgment on the grounds that they did not use excessive force on plaintiff. ECF No. 166-1 at 25-27. They do not move for summary judgment on the retaliation or state tort claims. Hutcheson and DeStefano move for summary judgment on the grounds that they did not fail to protect plaintiff and that he did not exhaust his administrative remedies as to the claims against them. Id. at 27-29, 37-39. Swarthout asserts that he did not retaliate against plaintiff and that plaintiff did not exhaust his administrative remedies. Id. at 29-30, 37-39. Lahey and Shadday argue that they should be granted summary judgment because they were not deliberately indifferent to plaintiff's medical needs and that he did not exhaust his administrative remedies against them. Id. at 31-32, 38-39. All defendants argue that they are entitled to qualified immunity. Id. at 33-34.

Sandy and Cruzen are each represented by separate counsel and have filed their own, separate motions for summary judgment. Sandy argues that she is entitled to summary judgment because she did not violate plaintiff's rights under the Eighth and First Amendments, did not commit any torts against plaintiff, and is alternatively entitled to qualified immunity. ECF No. 164-2 at 9-22. Cruzen moves for summary judgment on the grounds that he did not use excessive force, retaliate, or commit any torts against plaintiff; that the court should decline jurisdiction over the state tort claims; and that he is alternatively entitled to qualified immunity. ECF No. 165-2 at 5-10.

B.     Plaintiff's Response

At the outset, the court notes that plaintiff has largely failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Plaintiff has also failed to file a separate document disputing defendants' statement of undisputed facts that fully complies with Local Rule 260(b).

However, it is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of

procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987),

overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc).

However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary"

and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as

"limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d

1362, 1364-65 & n.4 (9th Cir. 1986).  Inmate litigants, therefore, should not be held to a standard

of "strict literalness" with respect to the requirements of the summary judgment rule.  Id.

    The court is mindful of the Ninth Circuit's more overarching caution in this context, as

noted above, that district courts are to "construe liberally motion papers and pleadings filed by

*pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder,

611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, the court considers the record before it in its

entirety despite plaintiff's failure to be in strict compliance with the applicable rules.

Specifically, the court notes that although plaintiff did not properly respond to defendants'

statements of fact in support of their renewed motions for summary judgment, he submitted

proper responses to the statements supporting the originally filed motions[2] (ECF No. 134 at 8-29;

ECF No. 134-1 at 5-9), and the court will consider plaintiff's responses to the originally filed

statements of fact, and defendants' replies as appropriate, in determining whether a fact is in

dispute.  However, only those assertions which have evidentiary support in the record will be

considered.

IV.    Legal Standards for Summary Judgment

    Summary judgment is appropriate when the moving party "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

---

[2]  The originally filed motions for summary judgment and statements of fact are identical.  See ECF No. 163 (ordering defendants to re-serve their original motions with updated certificates of service).

4

moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On March 16 and 17, 2016, defendants served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF Nos. 164-1, 165-1, 166; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (movant may provide notice) (en banc).

V.     Objections to Plaintiff's Evidence

Rule 56(c)(4) of the Federal Rules of Civil Procedure states that affidavits and declarations submitted for or against a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." In other words, "only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988) (citations omitted).

However, "[a]t the summary judgment stage, [the court does] not focus on the admissibility of the evidence's form. [It] instead focus[es] on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (citations omitted); Aholelei v. Haw. Dep't of Pub. Safety, 220 F. App'x 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment "which consisted primarily of litigation and administrative documents involving another prisoner and letters from other prisoners" and could be made admissible at trial). In other words, the court can consider the evidence if its contents could be presented in an admissible form at trial. Fraser, 342 F.3d at 1037.

Inadmissible hearsay cannot be considered on motion for summary judgment. Anheuser-Busch v. Natural Beverage Distrib., 69 F.3d 337, 345 n.4 (9th Cir. 1995); Courtney v. Canyon Television & Appliance Rental, Inc., 899 F.2d 845, 851 (9th Cir. 1990). Statements in affidavits that are legal conclusions, speculative assertions, or hearsay do not satisfy the standards of personal knowledge, admissibility, and competence required by 56(c)(4). Blair Foods, Inc. v. Ranchers Cotton Oil, 610 F.2d 665, 667 (9th Cir. 1980); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).

Defendants have objected to several items of evidence submitted by plaintiff on the grounds that they are inadmissible.

A.     Plaintiff's Declaration

Defendant Cruzen argues that plaintiff's declaration in support of his opposition to the motion for summary judgment is not cognizable evidence because it is unsworn (ECF No. 175 at 3), but conveniently overlooks the fact that his own declaration in support of his motion for summary judgment is similarly unsworn (ECF No. 165-5). If the court is to disregard plaintiff's declaration as inadmissible, then Cruzen's declaration should be considered equally inadmissible. However, these deficiencies have been previously addressed and Cruzen's objection will be overruled.

During briefing on defendants' original motions for summary judgment, it came to the court's attention that a number of the declarations that had been submitted by the parties, including plaintiff's and Cruzen's, were unsworn, and the parties were given an opportunity to

cure the defects. ECF No. 136 at 2. Cruzen opted to submit an amended declaration that was signed under penalty of perjury (ECF No. 137), while plaintiff filed a sworn declaration verifying the contents of his unsworn declaration (ECF No. 138), which was originally filed as a motion for summary judgment before the court construed it as a supplemental opposition (ECF Nos. 135, 136). Accordingly, admissible forms of both declarations exist in the court's record and will be considered as appropriate. Moreover, even if admissible forms of the declarations did not exist, the court would have considered them to the extent the parties could have made their contents admissible. Fraser, 342 F.3d at 1037.

However, the court recognizes that plaintiff's declaration not only expands upon the allegations in the complaint, but includes some facts that are materially different from those alleged in the complaint. Accordingly, the court will not consider any facts contained in plaintiff's declaration that contradict or are inconsistent with the facts alleged in the complaint or testified to by plaintiff during his deposition.

B.    Prior Lawsuits Against Defendants

Defendants Sandy and Lahey both object to plaintiff's submission of previous lawsuits against them as inadmissible character evidence. ECF No. 176 at 10; ECF No. 177-1 at 2-3. To the extent the lawsuits are being submitted in an attempt to establish defendants' character and that they acted in accordance with that character, the objections will be sustained and the evidence will not be considered. Fed. R. Evid. 404(a). To the extent plaintiff is attempting to use the lawsuits for some other, permissible purpose, such as establishing a habit or routine practice under Federal Rule of Evidence 406, the court need not rule on their admissibility at this time because plaintiff's testimony is sufficient to establish his version of events, which the court must take as true at this stage.

C.    Hearsay Statements

Defendants Austin, Hutcheson, Swarthout, Lahey, Lavagnino, Lavergne, Shadday, Cobian, and DeStefano identify several statements in plaintiff's opposition which they contend are inadmissible hearsay. ECF No. 177-1 at 2. The statements allegedly made by defendants Sandy and Lahey, offered by plaintiff, are statements made by an opposing party and therefore

are not hearsay.  Fed. R. Evid. 801(d)(2).  Defendants' hearsay objections to these statements will be overruled.  However, the objection to the statements allegedly made by the x-ray technician and Sgt. Best, both non-parties, will be sustained because they do not fall within a hearsay exception and there is no evidence that plaintiff would be able to make these statements admissible at trial.

> D.     Plaintiff's Exhibits

Defendants Austin, Hutcheson, Swarthout, Lahey, Lavagnino, Lavergne, Shadday, Cobian, and DeStefano also object to a number of exhibits submitted by plaintiff.  ECF No. 177-1 at 3-6.

Exhibit A (ECF No. 174 at 35): Plaintiff submits what appears to be a California Department of Corrections and Rehabilitation (CDCR) memorandum dated February 17, 2004, with the subject "ZERO TOLERANCE REGARDING THE 'CODE OF SILENCE.'" Defendants object to the memorandum as unauthenticated and lacking foundation and irrelevant. ECF No. 177-1 at 3.  The objections regarding authentication and foundation for the exhibit are overruled.  Defendants do not actually challenge the authenticity of the memorandum and review of CDCR's website reveals that the contents of the memorandum are a part of the cadet handbook,[3] demonstrating that plaintiff would likely be able to authenticate the memorandum at trial.  However, plaintiff presents the memorandum in an attempt to attack defendants' credibility (ECF No. 174 at 7) and credibility determinations are the function of the jury, not of a judge on a motion for summary judgment, Anderson, 477 U.S. at 255.  Accordingly, the exhibit will not be considered and the court declines to rule on the relevance or probative value of the exhibit at this time.

Exhibit B (ECF No. 174 at 38): Exhibit B consists of an inmate request form dated June 20, 2012, regarding the alleged harassment by defendant Sandy; the request appears to have been

_____

[3] The text of the memorandum is located at page six of the handbook, which can be accessed at http://www.cdcr.ca.gov/career_opportunities/por/docs/AcademyForms/AF-2016/Cadet_Handbook_BCOA.pdf&rct=j&frm=1&q=&esrc=s&sa=U&ved=0ahUKEwiF1dn7h5HTAhUBLmMKHe9MDq8QFggUMAA&usg=AFQjCNGjRAq8ErHgGm7SYiuB4-Q5O-6AkA.

responded to by Sandy.  Defendants object to the exhibit as unauthenticated, irrelevant, and

inadmissible hearsay.  ECF No. 177-1 at 4.  Defendants' objections are largely overruled.

Defendants do not challenge the authenticity of the document.[4]  Moreover, plaintiff would be

capable of authenticating the document at trial.  Although not dealing directly with the alleged

assault, the form documents the alleged interactions between plaintiff and Sandy that he claims

led up to the June 22, 2012 incident.  Finally, plaintiff's own statements within the form are

consistent with his sworn statements and could be made admissible.  The statements he attributes

to Sandy are not hearsay because they are statements made by an opposing party.  Fed. R. Evid.

801(d)(2).  However, the statements plaintiff attributes to non-defendants Sgt. Best and C.O.

Kelly will be disregarded as inadmissible hearsay and irrelevant.

Exhibit C (ECF No. 135 at 43-52; ECF No. 174 at 41-48):[5]  In Exhibit C, plaintiff submits

medical records showing that he signed consent forms for heat risk and psychotropic medication,

was receiving mental health services, and was being treated for anxiety and depression.

Defendants object to the records as being unauthenticated, inadmissible hearsay unless

authenticated, and irrelevant.  ECF No. 177-1 at 4.  They also argue that an expert opinion is

necessary to interpret them.  Id.  These objections are overruled.  Defendants do not challenge the

authenticity of the records, and plaintiff would likely be capable of authenticating them at trial.

Assuming authentication, the documents are not hearsay.  Furthermore, the records themselves

are fairly straightforward and do not require an expert to interpret them, especially for the purpose

for which plaintiff presents them.  Finally, though they are ultimately not material to disposition

of the motions for summary judgment, the records are relevant.  It is undisputed that plaintiff told

defendants that he could not be moved because of the fact that he was taking a heat medication

---

[4]  The court notes that the document is also included as part of one of defendants' exhibits (ECF No. 166-12 at 66), although it is authenticated as being a part of one of plaintiff's appeals.

[5]  It appears that plaintiff may not have submitted all of the documents that he intended to as part of Exhibit C to his response to the re-filed motions for summary judgment.  ECF No. 174 at 41-48.  Therefore the court also looks at the documents filed in his supplemental response to the originally filed motions for summary judgment, which appears to contain all items listed on his exhibit list and in some instances includes better quality copies.  ECF No. 135 at 43-52.

and that he was receiving mental health treatment.  Defendants' Statement of Undisputed Facts[6] (DSUF) (ECF No. 166-2) ¶ 7; ECF No. 134 at 31.  Assuming they could be authenticated, the records demonstrate that plaintiff was in fact receiving mental health treatment and was on heat medication, though they do not, by themselves, establish that he was unable to be housed in the building he was being moved to or that any of the defendants knew he could not be housed there.

Exhibit D (ECF No. 174 at 51-71): Exhibit D is made up of various appeals forms and responses and inmate requests related to the alleged assault on June 22, 2012.  Defendants object to the documents as unauthenticated.  ECF No. 177-1 at 4.  Defendants' objection is overruled.  Two-thirds of the documents (ECF No. 174 at 54-65, 70-71) have been included as attachments to the declaration of V. Estrella (ECF No. 166-12 at 42-46, 54-57, 65; ECF No. 166-15 at 4-6, 8).  As for the remaining documents (ECF No. 174 at 51-53, 66-69), there is no actual challenge to their authenticity and plaintiff would be able to authenticate them at trial.

Exhibit F (ECF No. 174 at 78-89): Plaintiff submits a letter that was apparently written by his wife and sent to the ombudsman's office, as well as several letters written by plaintiff to various individuals and a receipt of correspondence from the ombudsman's office.  Defendants object on the grounds that the various correspondence are unauthenticated, are not signed under penalty of perjury or accompanied by a supporting declaration, contain hearsay, are irrelevant, and in some instances appear to be incomplete.  ECF No. 177-1 at 4-5.  Defendants' objections to the letter written by plaintiff's wife will be sustained to the extent that its contents are largely irrelevant and the letter contains only second-hand information and inadmissible hearsay that does not appear to fall within any exception.  As for the letters written by plaintiff, the objections are overruled to the extent they contain information that plaintiff could testify to, any alleged statements by defendants are not hearsay, and any responses noted on the letters would likely be able to be made admissible at trial.

---

[6] "Defendants' Statement of Undisputed Facts" refers to Austin, Hutcheson, Swarthout, Lahey, Lavagnino, Lavergne, Shadday, Cobian, and DeStefano's statement of facts.  The statements of fact in support of Cruzen and Sandy's motions for summary judgment will be identified with the respective defendant's name.

Exhibit G (ECF No. 174 at 92-100): In Exhibit G, plaintiff submits portions of the rules violation report issued as a result of the June 22, 2012 incident. Defendants object on the ground that it is incomplete, has not been authenticated in its partial form, and contains inadmissible hearsay. These objections are overruled. Defendants do not actually dispute the authenticity of the documents and plaintiff would be able to authenticate them at trial.

Exhibit H (ECF No. 174 at 103-120): Exhibit H is comprised of various health care service requests and health care appeals. Defendants object on the grounds that the documents are not authenticated, are irrelevant, contain inadmissible hearsay, have no proof of actual submission, and may be unjustifiably redacted. ECF No. 177-1. Defendants' objections are overruled. Since plaintiff authored each of these documents, they are easily authenticated at trial. They are relevant in that they document plaintiff's complaints about his alleged injuries, which he would be able to testify to and thus their contents can be made admissible. Several of the documents also appear to have been signed as received by correctional staff. ECF No. 174 at 104, 107, 111-12. Finally, as to the large black areas on a number of the documents, plaintiff attached his original forms to his supplemental response to defendants' original motion for summary judgment (ECF No. 135) and the court has inspected them. The forms with the large blacked out areas are the gold inmate copies of the multi-part forms and the black areas are a part of the form, not a redaction added by plaintiff.

VI.     Undisputed Material Facts

The following facts are undisputed except as noted.

At all times relevant to the complaint, plaintiff was an inmate in the custody of the CDCR and housed at the California State Prison (CSP)-Solano, where defendants were all employed in various capacities.

On June 22, 2012, plaintiff was housed in Building 10. Sandy's Undisputed Statement of Facts (SSUF) (ECF No. 164-3) ¶ 3; ECF No. 181 at 2-3, ¶¶ 3, 10. On the morning of June 22, 2012, Sandy was the lieutenant in charge of Building 10 and ordered Cruzen and Lavagnino to

////

////

escort plaintiff to her office. SSUF ¶ 4;[7] Cruzen Decl. (ECF No. 165-5) at 2, ¶¶ 5-6; DSUF ¶ 4; ECF No. 181 at 2, ¶¶ 2, 4. Cruzen and Lavagnino went to plaintiff's cell and instructed him to submit to waist chains so that he could be taken to see Sandy, but plaintiff refused, saying that he was in fear for his life and that he wanted to see his psychiatrist. SSUF ¶¶ 6-7; Cruzen Decl. at 2, ¶ 8; DSUF ¶ 5; ECF No. 181 at 2, ¶ 5. According to plaintiff, Cobian was also present. ECF No. 22 at 6, ¶ 22. Plaintiff ultimately agreed to submit to waist restraints and exit his cell. SSUF ¶ 8; Cruzen Decl. at 2, ¶ 8; DSUF ¶ 5; ECF No. 181 at 2, ¶ 7. Defendant Cruzen[8] began escorting plaintiff to Sandy's office, but he refused to continue the escort when they reached the mental health staff office. SSUF ¶¶ 9-10; Cruzen Decl. at 2, ¶ 9; DSUF ¶ 6; ECF No. 181 at 3, ¶ 8.

Under defendants' version of events, after plaintiff refused to continue the escort, defendant Sandy responded and counseled him until he agreed to voluntarily continue the escort and walked from Building 10 to Building 9 on his own. SSUF ¶¶ 11-13; Cruzen Decl. at 2, ¶¶ 10-11; DSUF ¶¶ 7-8. Defendant Lavergne, who had witnessed plaintiff's "belligerent conduct," decided to follow along behind the escort, which consisted of defendants Cruzen, Lavagnino, and Sandy. DSUF ¶ 10. Cobian responded when saw plaintiff sitting on the floor in Building 9. DSUF ¶ 16; Cobian Decl. (ECF No. 166-7) at 2, ¶¶ 6-7. Plaintiff asserts that when he got to the medical office, Sandy, Cobian, and Lavagnino appeared and that he asked to speak with his case worker because he was in fear for his life. ECF No. 22 at 7, ¶¶ 27-28. Sandy responded by telling the other defendants to "'bring his ass on, I'm gonna show him who runs shit here!'" Id. ¶

---

[7] The court notes that SSUF ¶ 4, among other paragraphs, relies solely upon various incident reports as support for the fact stated therein. However, while the reports are accompanied by a declaration authenticating them as copies of original records, the contents of the reports themselves have not been sworn to and defendant Sandy has not provided a declaration adopting or verifying the contents of the reports. Nevertheless, the court will consider Sandy's reports as proper supporting evidence because the contents could be made admissible at trial and Sandy's response to interrogatory 7 (ECF No. 164-7 at 5), which has been verified (id. at 9), indicates that her testimony would be in line with the contents of her report. The contents of the other defendants' reports will be considered to the extent they are consistent with their respective sworn declarations.

[8] Defendants state that Lavagnino assisted in the escort (SSUF ¶ 9; Cruzen Decl. at 2, ¶ 9; DSUF ¶ 6), while plaintiff claims that he was being escorted only by Cruzen and that Lavagnino was waiting for him at the medical office with Sandy and Cobian (ECF No. 22 at 7, ¶¶ 25-27).

13

29.  Cruzen, Cobian, and Lavagnino then proceeded to drag and push plaintiff to Building 9 where Lavernge was waiting for them.  Id. ¶ 30.

The parties agree on a number of events that took place after they entered Building 9.  However, they disagree on some of the circumstances leading to the events and the order in which some events occurred.  It is undisputed that once in Building 9, Sandy directed Austin to open cell 119 and plaintiff refused to enter the cell and instead sat on the floor.  SSUF ¶¶ 16-18; Cruzen Decl. at 3, ¶¶ 12-13; DSUF ¶¶ 13; ECF No. 22 at 7-8, ¶¶ 31, 36; ECF No. 134 at 10.  It is also undisputed that Sandy ordered Cruzen, Lavagnino, Lavernge, and Cobian to remove plaintiff's boots and that plaintiff wrapped his legs around a pole in front of cell 119.  SSUF ¶¶ 24, 31; Cruzen Decl. at 3, ¶¶ 15-17; DSUF ¶¶ 16, 18; ECF No. 22 at 7, ¶ 32; ECF No. 181 at 3, ¶ 11.  At some point during the incident, Cruzen had his knee on plaintiff's chest, holding plaintiff down.  Cruzen Decl. at 3, ¶ 20; ECF No. 22 at 8, ¶ 40.  Defendants ultimately gave up trying to place plaintiff in cell 119 and he was instead placed in a holding cell.  SSUF ¶¶ 45-46; Cruzen Decl. at 3, ¶¶ 21-22; DSUF ¶¶ 21-22; ECF No. 22 at 9, ¶¶ 46-49.

Under plaintiff's version of events, almost immediately after entering Building 9, Sandy ordered Cruzen, Cobian, Lavagnino, and Lavergne to remove plaintiff's shoes.  ECF No. 22 at 7, ¶ 32.  When he told her they were approved and issued by medical she screamed "[T]his is what happens to inmates who snitch on me!"  Id. at 8, ¶¶ 33-34.  At this time, plaintiff noticed Austin in the control tower pointing a rifle at him and, fearing defendants intended to use deadly force, he sat on the ground.  Id.,¶¶ 35-36.  Cobian and Lavergne grabbed his legs while Cruzen pushed his upper body to the floor.  Id., ¶ 37.  Cobian and Lavergne, who were wearing boots, began stepping on plaintiff's ankles and twisting his legs while trying to remove his shoes.  Id., ¶¶ 38-39.  Meanwhile Cruzen used "his knee and full body weight (approximately 225 lbs.) [to drop] down atop of Plaintiff's chest" causing him to lose consciousness.  Id., ¶¶ 40-41.  When plaintiff regained consciousness, Cobian and Lavergne were "stomping on Plaintiff's ankles and feet" and Cruzen was "stomping and kicking Plaintiff in the ribcage, left hand and wrist."  Id., ¶¶ 41-42.  Sandy, who had been standing there the whole time, ordered Cobian, Lavergne, Cruzen, and Lavagnino to put plaintiff in cell 119 and they proceeded to drag him over to the cell, "while

14

simultaneously shoving and kneeing Plaintiff in his head and body." Id. at 9, ¶¶ 43-44. As he was being dragged toward the cell, plaintiff grabbed hold of a nearby pole. ECF No. 174 at 21. Sandy then cancelled her order to have plaintiff put in cell 119 and instead directed that he be placed in a holding cell. ECF No. 22 at 9, ¶ 46. Cobian, Lavergne, Cruzen, and Lavagnino then dragged him across the floor and, while putting him in the holding cell, deliberately ran his face into the corner of the cell door, splitting his chin. Id., ¶¶ 47-48.

In contrast, defendants claim that upon being ordered to enter cell 119, plaintiff refused, broke free of their hold, and sat on the floor. SSUF ¶ 17; Cruzen Decl. at 3, ¶¶ 12-13; DSUF ¶ 13. After plaintiff sat, defendants Lavagnino and Cruzen attempted to lift plaintiff up, but he continued to resist. SSUF ¶¶ 20-23; Cruzen Decl. at 3, ¶ 14; DSUF ¶ 15. Cobian and Lavergne then responded to the area and plaintiff wrapped his legs around the pole. SSUF ¶¶ 24, 27; Cruzen Decl. at 3, ¶ 17; DSUF ¶ 16. As defendants freed plaintiff's legs from around the pole, he began kicking at them and Sandy ordered plaintiff's boots removed. SSUF ¶¶ 29, 31; Cruzen Decl. at 3, ¶¶ 16-17; DSUF ¶¶ 17-18. Once plaintiff's legs were removed from around the pole and his boots were off, Sandy ordered the other defendants to "scoot" plaintiff into cell 119 while he continued to resist and kick at defendants, shaking his body, and trying to free himself from their control. SSUF ¶¶ 32-44; Cruzen Decl. at 3, ¶¶ 18-19; DSUF ¶ 19. As plaintiff was kicking at Lavergne and Cobian, Cruzen placed his knee on plaintiff's chest and used his bodyweight to pin plaintiff to the ground. Cruzen Decl. at 3, ¶ 20. Sandy cancelled her order to place plaintiff in cell 119 and instead ordered that he be placed in the holding cell. SSUF ¶ 45; Cruzen Decl. at 3, ¶ 21; DSUF ¶ 21. Plaintiff immediately stopped struggling and walked into the holding cell, but as defendants went to close the cell door, plaintiff turned rapidly and tried to shove the officers out of the way and force the door open with his chest and shoulder. SSUF ¶¶ 46-47; Cruzen Decl. at 3-4, ¶¶ 22-23; DSUF ¶¶ 22-23. The cell door had to be forcibly shut while Lavergne held plaintiff back. SSUF ¶ 48; Cruzen Decl. at 4, ¶ 23; DUSF ¶ 23. During the incident, because there was inmate movement on the floor, defendant Austin, in accordance with policy, had the rifle slung on his person and when the disturbance with plaintiff began he picked up the non-lethal impact launcher and held it in a low, ready position. DSUF ¶ 14. Austin did

1   not point the rifle or impact launcher at Johnson at any time.  Id.

2       After the incident, Sandy, Cruzen, Lavagnino, Lavergne, Cobian, and Austin completed

3   incident reports.  Sandy completed her report on June 23, 2012 (ECF No. 164-5 at 4), while the

4   other defendants completed theirs on June 22, 2012 (id. at 9-22).

5       The facts surrounding the medical treatment plaintiff received are largely undisputed.[9]

6   Plaintiff was escorted to medical by defendants Hutcheson and DeStefano in order to have x-rays

7   taken of his chest and left hand.  DSUF ¶ 28; ECF No. 134 at 20.  After the x-rays were taken,

8   Hutcheson and DeStefano escorted plaintiff to the Treatment and Triage Area where he was seen

9   by defendant Shadday.  DSUF ¶¶ 30-31; ECF No. 22 at 10, ¶ 53.  Shadday examined the x-rays,

10  which showed no fractures to plaintiff's ribs or left finger.  DSUF ¶¶ 40, 43; ECF No. 134 at 14,

11  22; ECF No. 166-8 at 6-9.  At some point, plaintiff was seen by defendant Lahey who examined

12  plaintiff, recorded his injuries, and referred him to a doctor for review, though plaintiff disputes

13  whether all of his injuries were recorded.  DSUF ¶ 35; ECF No. 22 at 1, ¶ 52.

14      A few days after the incident, defendant Swarthout had plaintiff transferred to California

15  Medical Facility.  DSUF ¶ 47; ECF No. 22 at 12, ¶¶ 68-70.

16  VII.    Discussion

17          A.      Defendants Hutcheson and DeStefano

18      Plaintiff's only allegations against Hutcheson and DeStefano are a general assertion that

19  they violated his rights under the Eighth Amendment and that they escorted him to and from

20  medical after the incident on June 22, 2012.  ECF No. 22 at 10, 13, ¶¶ 51, 55.  Nothing in the

21  complaint indicates that Hutcheson or DeStefano participated in assaulting plaintiff or were

22  present during the alleged assault such that they could have intervened.  Nor does plaintiff, in

23  responding to the motion to dismiss and for summary judgment, argue or demonstrate that such

24  facts exist.  ECF No. 174.  Moreover, in his response to the originally filed motion, plaintiff

25  _____

26  [9]  Although the court notes that there appear to be a number of discrepancies both between and
    within plaintiff and defendants' evidence regarding the timing and location of the medical
27  treatment received, these discrepancies are ultimately not material because plaintiff did not
    exhaust his administrative remedies as to his claims against Lahey and Shadday.
28

16

agreed that he had failed to state a claim for relief against either defendant and that dismissal was appropriate.  ECF No. 134 at 6, 39.  Since there are no material disputes of fact regarding the involvement of defendants Hutcheson and DeStefano, and their act of escorting plaintiff to and from medical does not constitute a constitutional violation, their request for summary judgment will be granted.

B.      Defendants Lahey, Shadday, and Swarthout

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the PLRA, 42 U.S.C. § 1997e(a).  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences").  "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006); Jones v. Bock, 549 U.S. 199, 211 (2007)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Jones, 549 U.S. at 204, 216.  "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).  "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'"  Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original) (citation omitted).  Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand."  Albino, 747 F.3d at 1171 (citation and internal quotations marks omitted).  "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'"  Ross, 136 S. Ct. at 1856.  "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."  Id.  at 1857.

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (per curiam) ("The California prison system's requirements 'define the boundaries of proper exhaustion'" (quoting Jones, 549 U.S. at 218)).

The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by Albino, 747 F.3d at 1168.

Defendants set forth properly supported facts showing that there was a grievance system available, that plaintiff was capable of utilizing the process, and that he did not file a third-level appeal addressing his claims against defendants Lahey, Shadday, and Swarthout. DSUF ¶¶ 50-75. With this evidence, defendants have met their burden of raising and proving the absence of exhaustion. Albino, 747 F.3d at 1172 ("[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."). The burden now shifts to plaintiff to show that he did not exhaust because administrative remedies were unavailable. Id. In responding to the re-filed motion for summary judgment,

1    plaintiff completely fails to address the claim that he did not exhaust his administrative remedies.

2    ECF No. 174.  Moreover, though he did make some attempt to respond to the argument in his

3    response to the originally filed motion, his arguments were conclusory at best.  ECF No. 134.

4            In his original response, which is signed under penalty of perjury, plaintiff admitted that a

5    grievance system existed and that he knew how to use it.  Id. at 24.  He also admitted that

6    between June 1, 2012, and October 1, 2013, he had four non-medical appeals accepted at the third

7    level of review, only two of which originated out of CSP-Solano.  Id. at 26.  Plaintiff also agreed

8    that of the appeals processed at the third level of review, one appeal, No. SOL-12-01381, dealt

9    with his claims against Sandy, Cruzen, Austin, Lavagnino, Lavergne, and Cobian.  Id. at 27.  He

10   states that his other appeals were screened out, but does not allege that they were improperly

11   screened out.  Id.  He also failed to admit or dispute DSUF ¶ 64, which states that "[n]one of the

12   appeals [he] filed from June 22, 2012 to October 1, 2013 reference or grieve Defendants

13   Hutcheson, DeStefano, Swarthout, Lahey, or Shadday's alleged misconduct."  Id.  Appeal No.

14   SOL-12-01381 does not mention any of these defendants by name or allege that he was subject to

15   a retaliatory transfer or denied medical treatment.[10]  ECF No. 166-12 at 42-66.

16           With respect to medical appeals, plaintiff denied that he did not have any appeals

17   originating from CSP-Solano accepted at the third level of review between June 22, 2012, and

18   October 1, 2013.  ECF No. 134 at 28.  However, his ground for denying the statement was that he

19   "submitted appeals but the [Inmate Correspondence and Appeals Branch] kept rejecting them for

20   any reason."  Id.  He references an Exhibit D, but there is no Exhibit D attached (id.) and the two

21   medical appeals attached to his declaration are about obtaining medical treatment after he was

22   transferred, not about deficient treatment on June 22, 2012 (ECF No. 174 at 106, 111-12).

23   Plaintiff states several more times that he attempted to exhaust his appeals, but that his appeals

24   were rejected.  ECF No. 134 at 28-29.  At no point does plaintiff elaborate on why they were

25   _____

26   [10]  The complaints in the other three third-level appeals deal with a cell search on February 20,
     2012 (No. SOL-12-00195); the cancellation of an appeal of a disciplinary as being untimely (No.

27   SAC-13-00765/SOL-13-01132); and a rules violation for refusing a housing assignment (No.
     SAC-13-01105).  ECF No. 166-10 at 10-67.

28

rejected or assert that the rejections were improper.  In his argument section, he states only that he "attempted to Exhaust [sic] all his administrative remedies but was pr[e]vented from doing so by the Appeals Coordinator at Sacramento."  Id. at 42.  He offers no explanation as to how he was prevented from exhausting his remedies.

Plaintiff's bare assertions of an inability to exhaust administrative remedies are insufficient to create a material issue of fact.  Defendants Lahey, Shadday, and Swarthout's motion for summary judgment on grounds of non-exhaustion therefore should be granted.

           C.        Eighth Amendment Excessive Use of Force Claims

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)).  "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).

When determining whether the force was excessive, the court looks to "the extent of injury suffered by an inmate . . . , the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 321).  While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  Hudson, at 9 (citing Whitley, 475 U.S. at 327).

The extent of injury suffered by the plaintiff may indicate the amount of force applied.  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).

> [N]ot "every malevolent touch by a prison guard gives rise to a federal cause of action."  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from

> constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."

Id. at 37-38 (quoting Hudson, 503 U.S. at 9).

Excessive force cases often turn on credibility determinations, and "[the excessive force inquiry] 'nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom.'" Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (alteration in original) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)). Therefore, "'summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'" Id. The Ninth Circuit has "held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury." Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (citations omitted).

### 1. Injury Suffered by Plaintiff

The nature and extent of plaintiff's injury, while not dispositive, must be considered in determining whether the evidence supports a reasonable inference that defendants' alleged use of force was motivated by malicious or sadistic intent. Hudson, 503 U.S. at 7. "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38. "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." Hudson, 503 U.S. at 7.

This factor weighs in plaintiff's favor with respect to the alleged actions of Lavergne, Lavagnino, Cobian, and Cruzen in re-housing him in Building 9. While plaintiff's medical records do not support his claims that he suffered fractures in his ribs and finger (ECF No. 22 at 10, ¶ 57), his allegations regarding the various injuries and pain he experienced (id.; ECF No. 174 at 5, 22, 24, 26) and the examination record from nurse Kiesz (id. at 75) support a finding that his

injuries were not insignificant, indicating that the force used by Lavergne, Lavagnino, Cobian, and Cruzen was more than de minimis.

However, plaintiff does not allege any injury as a result of defendant Austin merely pointing a rifle at him, which supports a finding that Austin's use of force was de minimis. This factor therefore weighs in Austin's favor.

### 2. Need for Application of Force

An inmate's refusal to comply with orders may present a threat to the safety and security of a prison. Lewis v. Downey, 581 F.3d 467, 476 (7th Cir. 2009); Whitley, 475 U.S. at 320-22; Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979).

> "Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them . . . . Inmates are and must be required to obey orders. When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger."

Lewis, 581 F.3d at 476 (alterations in original) (quoting Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984)). However, "[n]ot every instance of inmate resistance justifies the use of force." Treats v. Morgan, 308 F.3d 868, 873 (8th Cir. 2002) (citing Hickey v. Reeder, 12 F.3d 754, 759 (8th Cir. 1993)).

It is undisputed that plaintiff resisted being re-housed in Building 9. SSUF ¶¶ 9-10, 16-18; Cruzen Decl. at 2-3, ¶¶ 9, 12-13; DSUF ¶¶ 6, 13; ECF No. 22 at 8, ¶ 36; ECF No. 134 at 10, 31; ECF No. 181 at 3, ¶ 8. Accordingly, some use of force was arguably necessary to bring plaintiff into compliance with the orders to re-house and this factor tips in defendants' favor.

### 3. Relationship Between Need for Force and Amount of Force Used

In determining whether there has been an Eighth Amendment violation, the standard is "malicious and sadistic force, not merely objectively unreasonable force." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002); Hudson, 503 U.S. at 9 (not every malevolent touch gives rise to an Eighth Amendment claim). Even in instances where force is justified, the use of force may still violate the Eighth Amendment if it is disproportionate to the need. Hoptowit v. Ray, 682 F.2d 1237, 1251 (9th Cir. 1982) ("[G]uards may use force only in proportion to the need in each

situation."); <u>Covington v. Fairman</u>, 123 F. App'x 738, 740 (9th Cir. 2004) (finding that, if true, under plaintiff's version of events, "the beating was out of proportion to the officers' legitimate need to end the nonviolent 'boarding up' incident and out of proportion to Plaintiff's resistance" and "amounted to a wanton beating in violation of the Eighth Amendment").

According to the allegations in the amended complaint, defendants' response to plaintiff's resistance included, among other things, stomping and kicking plaintiff while he was unconscious,[11] kneeing him in the head and body while dragging him to a cell, and deliberately running his face into the corner of the cell. ECF No. 22 at 8-9, ¶¶ 41-42, 44, 48. If plaintiff's version of events is taken as true, then his resistance was nonviolent and Lavergne, Lavagnino, Cobian, and Cruzen's response was clearly out of proportion to his resistance. Plaintiff's allegations regarding the events leading up to the cell transfer and defendant Sandy's alleged statements to Cruzen, Cobian, and Lavagnino to "'bring his ass on, I'm gonna show him who runs shit here!" and to plaintiff that "this is what happens to inmates who snitch on me!" (<u>id.</u> at 4-8, ¶¶ 8-34) also provide circumstantial evidence that the transfer was carried out with malicious intent.

However, plaintiff's claim that Austin pointed a rifle at him (<u>id.</u> at 8, ¶ 35) demonstrates a level of force proportional to his admitted resistance and does not support a finding of malicious or sadistic intent. There are no allegations or evidence that Austin ever shot at plaintiff or did anything more than train a rifle on him during the incident. Therefore, there is no material dispute as to whether Austin's use of force was disproportional to the need or malicious and sadistic.

4. <u>Threat Perceived by Defendants</u>

The fourth <u>Hudson</u> factor considers "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them." <u>Whitley</u>, 475 U.S. at 321. In weighing this factor, courts should be mindful that "in making and carrying out decisions involving the use of force to restore order in the face of a

---

[11] Plaintiff testified that after losing consciousness he awoke to Lavergne, Cobian, and Curzen stomping on him and kicking him. ECF No. 22 at 8, ¶¶ 41-42.

prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." Id. at 320. However, "the absence of an emergency may be probative of whether the force was indeed inflicted maliciously or sadistically." Jordan v. Gardner, 986 F.2d 1521, 1528 n.7 (9th Cir. 1993) (citing Hudson, 503 U.S. at 7 (court should look at need for force and reasonably perceived threat)).

Plaintiff's facts establish that while he did resist being re-housed, his resistance was non-violent and he did not lash out at or try to attack or kick any of the defendants. ECF No. 22 at 8, ¶ 36; ECF No. 134 at 10, 31; ECF No. 181 at 3, ¶¶ 1-3, 8. Under these facts, while some threat may have existed due to plaintiff's refusal to comply with orders, it does not appear that there was any immediate threat of physical harm to any of the defendants or plaintiff. Nor is there evidence that any other inmates were out of their cells such that there would be danger to or from other inmates or concerns about the incident escalating in size. Taking these facts as true, any threat that existed was limited.

5.  Efforts Made to Temper the Severity of the Force

Whether defendants attempted to temper the severity of the force used upon plaintiff is entirely dependent upon which version of the facts is believed. In plaintiff's version of the facts, which must be taken as true for the purposes of summary judgment, defendants Lavergne, Lavagnino, Cobian, and Cruzen not only failed to temper the amount of force used, but showed signs of deliberately using force on plaintiff for no other reason than to cause him harm. This factor therefore tips in plaintiff's favor as to these defendants. With respect to Austin, there is no indication that he did anything more than keep a rifle trained on plaintiff during the incident, which would indicate that he tempered the force he utilized.

6.  Defendant Sandy

"A supervisor is liable under § 1983 for a subordinate's constitutional violations 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" Maxwell v. County of San Diego, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)). "Thus, supervisors 'can be held liable for:

24

1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others.'" <u>Edgerly v. City and County of San Francisco</u>, 599 F.3d 946, 961 (9th Cir. 2010) (quoting <u>Cunningham v. Gates</u>, 229 F.3d 1271, 1292 (9th Cir. 2000)).

It is undisputed that at the time of the incident defendant Sandy was a lieutenant and held a supervisory position. Under plaintiff's version of events, defendant Sandy was not only present and capable of intervening to stop the excessive force, but in fact directed and encouraged the other defendants to use excessive force. Taking these facts as true, Sandy is subject to liability for the excessive force used by her subordinates. It does not matter that she did not touch plaintiff herself.[12]

Defendant Austin, on the other hand, is not liable for the actions of the other defendants because there is no evidence or allegation that he held a supervisory position. However, as set forth below, he can still be liable for failing to protect plaintiff.

### 7. Conclusion

Defendants' motions for summary judgment on the excessive use of force claims against Lavergne, Lavagnino, Cobian, Cruzen, and Sandy should be denied, because material facts are disputed and resolution of the claims requires credibility determinations that are the province of the jury. However, summary judgment should be granted as to plaintiff's claim for excessive force against defendant Austin for pointing a rifle at him.

### D. Eighth Amendment Failure to Protect Claims

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." <u>Farmer</u>, 511 U.S. at 832 (internal quotation marks and citations omitted). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the

---

[12] Although plaintiff alleges in his declaration that Sandy pulled his hair (ECF No. 174 at 19, ¶ AF), he did not make any claims of direct use of force against her in the complaint (ECF No. 22). Accordingly, any claims for excessive use of force against Sandy are based upon the actions of her subordinates.

deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal quotation marks and citations omitted). Second, the prison official must subjectively have a "sufficiently culpable state of mind," "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted). The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Then he must fail to take reasonable measures to abate the substantial risk of serious harm. Id. at 847. A person can deprive another of a constitutional right, within the meaning of § 1983, "not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).

Because there are material issues of fact as to whether defendants Lavergne, Lavagnino, Cobian, Cruzen, and Sandy used excessive force against plaintiff, there are also material issues of fact as to whether any of these defendants failed to protect plaintiff from the actions of the others. If any of the defendants did in fact use excessive force against plaintiff, then the other defendants are liable for failing to protect plaintiff from the excessive use of force. Summary judgment on this claim should therefore be denied.

Defendant Austin should also be denied summary judgment because if plaintiff's allegations of excessive use of force against Lavergne, Lavagnino, Cobian, Cruzen, and Sandy are true, then Austin failed to try and stop the excessive force and instead simply watched it take place.

### E. State Tort Claims

Sandy and Cruzen move for summary judgment on plaintiff's state tort claims. ECF No. 164-2 at 17-20; ECF No. 165-2 at 9-10. Lavergne, Lavagnino, Cobian, and Austin have not moved for summary judgment on these claims. ECF No. 166-1.

1             1.   <u>Assault and Battery</u>

> The essential elements of a cause of action for assault are: (1)
> defendant acted with intent to cause harmful or offensive contact, or
> threatened to touch plaintiff in a harmful or offensive manner; (2)
> plaintiff reasonably believed she was about to be touched in a
> harmful or offensive manner or it reasonably appeared to plaintiff
> that defendant was about to carry out the threat; (3) plaintiff did not
> consent to defendant's conduct; (4) plaintiff was harmed; and (5)
> defendant's conduct was a substantial factor in causing plaintiff's
> harm.

<u>Yun Hee So v. Sook Ja Shin</u>, 212 Cal. App. 4th 652, 668-69 (Cal. App. 2013) (citing CACI[13] No.

1301; <u>Plotnik v. Meihaus</u>, 208 Cal. App. 4th 1590, 1603-04 (Cal App. 2012)).

> The essential elements of a cause of action for battery are: (1)
> defendant touched plaintiff, or caused plaintiff to be touched, with
> the intent to harm or offend plaintiff; (2) plaintiff did not consent to
> the touching; (3) plaintiff was harmed or offended by defendant's
> conduct; and (4) a reasonable person in plaintiff's position would
> have been offended by the touching.

<u>Id.</u> (citing CACI No. 1300; <u>Kaplan v. Mamelak</u>, 162 Cal. App. 4th 637, 645 (Cal. App. 2008)).

In a claim for battery by a peace officer, plaintiff must also establish that the officer used

unreasonable force. <u>Yount v. City of Sacramento</u>, 43 Cal. 4th 885, 902 (Cal. 2008) (citing <u>Edson</u>

<u>v. City of Anaheim</u>, 63 Cal. App. 4th 1269, 1273-74 (1998)); Cal. Penal Code § 830.5(b)

(including correctional officers employed by the California Department of Corrections and

Rehabilitation and having custody of wards as peace officers).

       The same material issues of fact regarding defendants' intent and the level and type of

force used which preclude granting summary judgment on the excessive use of force claims also

preclude granting summary judgment for plaintiff's claims for assault and battery. <u>See</u> <u>Cable v.</u>

<u>City of Phoenix</u>, 647 F. App'x 780, 783 (9th Cir. 2016) (error to grant summary judgment on

state law assault and battery claims, which relied on reasonableness of actions, when there was "a

genuine dispute of material fact as to the amount of force used and the reasonableness of that

force"). Sandy and Cruzen's requests for summary judgment on these claims should therefore be

denied.

---

[13] Judicial Council of California Civil Jury Instructions.

## 2. Intentional Infliction of Emotional Distress

The elements of a prima facie claim for intentional infliction of emotional distress are as follows: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (Cal. 1982) (quotation marks and citations omitted). For conduct to be outrageous, it "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id. (citations omitted).

> It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

Slaughter v. Legal Process & Courier Serv., 162 Cal. App. 3d 1236, 1248 (Cal. Ct. App. 1984) (internal quotation marks omitted) (quoting Golden v. Dungan, 20 Cal. App. 3d 295, 308-09 (Cal. Ct. App. 1971)).

"It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff." Christensen v. Superior Court of Los Angeles, 54 Cal. 3d 868, 903 (Cal. 1991)). "The requirement that the defendant's conduct be directed primarily at the plaintiff is a factor which distinguishes intentional infliction of emotional distress from the negligent infliction of such injury." Id. at 904.

If plaintiff's allegations are taken as true, Sandy instigated the transfer from Building 10 to Building 9 for the express and sole purpose of punishing plaintiff for filing a complaint against her and enlisted the aid of Cruzen and the other defendants in teaching plaintiff a lesson about who was in charge and what happens to inmates that "snitch" on her. Moreover, plaintiff's facts describe an interaction that was more than a necessary use of force to bring plaintiff into compliance and crossed the line into a deliberate assault. These issues of material fact regarding the motivation for and extent of the force used on plaintiff preclude summary judgment on the

intentional infliction of emotional distress claims because plaintiff version of facts constitutes extreme and outrageous conduct on the part of defendants Sandy and Cruzen and establishes that he suffered severe emotional distress.

F.    First Amendment Retaliation Claims

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004) (footnote and citations omitted).

Under the first element, plaintiff need not prove that the alleged retaliatory action, in itself, violated a constitutional right.  Pratt, 65 F.3d at 806 (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[P]risoners may still base retaliation claims on harms that would not raise due process concerns.").  The interest cognizable in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive.  However, not every allegedly adverse action is sufficient to support a claim for retaliation under § 1983.  Watison, 668 F.3d at 1114 (harm must be "'more than minimal'" (quoting Rhodes, 408 F.3d at 568, n.11)); Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002) ("[S]ome adverse actions are so de minimis that they do not give rise to constitutionally cognizable injuries." (citing Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999))).

To prove the second element, retaliatory motive, plaintiff must show that his protected activities were "the 'substantial' or 'motivating' factor behind the defendant's conduct."

29

1    Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (some internal quotation marks omitted)

2    (quoting Soranno's Gasco, Inc v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)).  Plaintiff must

3    provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere

4    speculation is not sufficient.  McCollum v. Cal. Dep't of Corr. and Rehab., 647 F.3d 870, 882

5    (9th Cir. 2011) (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)); Wood v. Yordy,

6    753 F. 3d 899, 905 (9th Cir. 2014) (citations omitted).  In addition to demonstrating defendant's

7    knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include:  (1)

8    proximity in time between the protected conduct and the alleged retaliation; (2) defendant's

9    expressed opposition to the protected conduct; or (3) other evidence showing that defendant's

10   reasons for the challenged action were false or pretextual.  McCollum, 647 F.3d at 882 (quoting

11   Allen, 283 F.3d at 1077).

12        The third element includes prisoners' First Amendment right to access to the courts.

13   Lewis v. Casey, 518 U.S. 343, 346 (1996).  While prisoners have no freestanding right to a prison

14   grievance process, Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's

15   fundamental right of access to the courts hinges on his ability to access the prison grievance

16   system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by

17   Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001).  Because filing administrative grievances and

18   initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate

19   against prisoners for engaging in these activities.  Rhodes, 408 F.3d at 567.

20        Under the fourth element, plaintiff need not demonstrate a "*total* chilling of his First

21   Amendment rights," only that defendant's challenged conduct "would chill *or* silence a person of

22   ordinary firmness from future First Amendment activities."  Rhodes, 408 F.3d at 568-69

23   (emphasis in original, citation and internal quotation marks omitted).  Moreover, direct and

24   tangible harm will support a retaliation claim even without demonstration of a chilling effect on

25   the further exercise of a prisoner's First Amendment rights.  Id. at 567 n.11.  "[A] plaintiff who

26   fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as

27   a retaliatory adverse action.  Brodheim, 584 F.3d at 1269 (citing Rhodes, 408 F.3d at 567 n.11).

28        Regarding the fifth element, the Ninth Circuit has held that preserving institutional order,

discipline, and security are legitimate penological goals that, if they provide the motivation for an official act taken, will defeat a claim of retaliation. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (citing Rizzo, 778 F.2d at 532). When considering this final factor, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). Plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for defendant's challenged conduct. Pratt, 65 F.3d at 806.

### 1. Adverse Action

To state a cognizable retaliation claim, a prisoner must show that a state actor took some adverse action against him. Rhodes, 408 F.3d at 567. In this case, plaintiff asserts that defendants authored false reports regarding the incident on June 22, 2012. Authoring false reports against plaintiff for the purpose of subjecting him to disciplinary measures is sufficient to constitute adverse action. Hines, 108 F.3d at 269; Austin v. Terhune, 367 F.3d 1167, 1170-71 (9th Cir. 2004).

Sandy argues that there was no adverse action, because her report truthfully stated that plaintiff resisted being re-housed in cell 119. ECF No. 164-2 at 17. However, her argument regarding the alleged falsity of the report focuses only on the parts of the incident that are undisputed, such as plaintiff sitting on the ground and refusing to go in the cell, and ignores the clearly disputed facts, such as the degree of force used and whether plaintiff attempted to attack or kick the other defendants. Id. The implication that every part of a report must be false to constitute adverse action is without merit. The alleged retaliatory fabrication is that plaintiff was assaultive and aggressively resistant during a legitimate cell transfer, and that officers used the least amount of force necessary to bring him into compliance. This depiction of the incident clearly has different consequences for plaintiff than his own version, in which he was non-violently resisting an expressly retaliatory cell transfer and was beaten by officers in response. Accordingly, the allegedly false reports constitute an adverse action. Defendant Cruzen does not argue that the report was not adverse. ECF No. 165-2 at 8.

### 2. Chilling Effect

To show a chilling effect, a plaintiff does not have to show that his speech was actually inhibited, "but rather that the adverse action at issue 'would chill *or* silence a person of ordinary firmness from future First Amendment activities.'" Brodheim, 584 F.3d at 1271 (quoting Rhodes, 408 F.3d at 568-69). Direct and tangible harm will support a retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. Id. at 1270 (quoting Rhodes, 408 F.3d at 567 n.11). For an inmate to show a chilling effect through direct and tangible harm, the harm need only be more than minimal. Watison, 668 F.3d at 1114 (citations omitted). False charges intended to subject an inmate to discipline are sufficient to constitute a chilling effect. Hines, 108 F.3d at 269 (allegation that "false charge infringed [plaintiff's] First Amendment right to file prison grievances" was sufficient to constitute injury in the form of a chilling effect).

Cruzen argues that his report did not chill plaintiff's exercise of his First Amendment rights because plaintiff asserted in his complaint that he exhausted his administrative grievances and filed a claim under the Government Claims Act. ECF No. 165-2 at 8. Whether plaintiff was actually chilled in his exercise is immaterial and this argument is without merit. Falsifying allegations against plaintiff because he used the grievance process is sufficient to constitute a chilling action. Defendant Sandy does not argue that plaintiff failed to show a chilling effect. ECF No. 164-2 at 17.

### 3. Retaliatory Motive and Legitimate Penological Purpose

Plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendants' challenged conduct. Brodheim, 584 F.3d at 1271. Retaliation is actionable even if the act, taken for a different reason, would have been proper. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). However, the defendant may prevail if he shows that he would have reached the same decision absent the protected conduct. Id. at 287.

Cruzen argues that there is no evidence of retaliatory motive because he was required to complete an incident report. ECF No. 165-2 at 8. Both Cruzen and Sandy also argue that

32

plaintiff's retaliation claim fails because their reports served a legitimate penological purpose. Id.; ECF No. 64-2 at 17. Both these arguments fail. While Cruzen may have been required to submit an incident report, he was not required to file a false report. The retaliatory conduct is the falsification of the contents of the report, not the fact of the report itself. Plaintiff has alleged sufficient facts, in the form of comments made by Sandy during the incident, that support finding the falsification was motivated by plaintiff filing a complaint about Sandy. Finally, there is no legitimate penological purpose in filing false reports.

### 4. Conclusion

Because there are material disputes of fact regarding whether the contents of the reports were falsified, the motion for summary judgment on plaintiff's retaliation claim must be denied.

### G. Qualified Immunity

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001) overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling Saucier's requirement that the two prongs be decided sequentially). The Supreme Court has "'repeatedly told courts . . . not to define clearly established law at a high level of generality.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (alteration in original) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" Id. (emphasis in original). "[T]his inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (quoting Saucier, 533 U.S. at 201).

These questions may be addressed in the order most appropriate to "the circumstances in the particular case at hand." Pearson, 555 U.S. at 236. Thus, if a court decides that plaintiff's

allegations do not support a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. On the other hand, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court need not determine whether plaintiff's allegations support a statutory or constitutional violation. Pearson, 555 U.S. at 236-42. "[S]ummary judgment based on qualified immunity is improper if, under the plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer could not have believed his conduct was lawful." Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) (citing Grossman v. City of Portland, 33 F.3d 1200, 1208 (9th Cir. 1994)).

The court has already determined that under plaintiff's version of the facts, the allegations demonstrate violations of plaintiff's rights under the Eighth and First Amendments and the first prong is therefore resolved in plaintiff's favor.

### 1. Excessive Force and Failure to Protect

With respect to whether there was a clearly established right, the law at the time of the use of force was clear that force used sadistically and maliciously for the very purpose of causing harm violated the Eighth Amendment. Whitley, 475 U.S. at 320-21. The disputes of fact regarding the motivation for the use of force and the degree and type of force used preclude a finding that defendants are entitled to qualified immunity, because a reasonable officer would not have believed that it was lawful to use force on plaintiff for the purpose of inflicting harm.

Similarly, it was clearly established that "a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995). Because there are disputes of material fact regarding whether the force used was excessive, the court is unable to find defendants are entitled to qualified immunity on the failure to protect claims. If the use of force was excessive, then a reasonable officer would not have believed that it was permissible to allow the use of force to continue without attempting to intervene in some fashion.

### 2. Retaliation

"[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth

Circuit, for qualified immunity purposes." Pratt, 65 F.3d at 806 (citing Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995)). Moreover, prior to the events at issue in this case, it was also clearly established that issuing false rules violations reports in retaliation for filing a grievance was prohibited retaliatory conduct. Hines, 108 F.3d at 269; Austin, 367 F.3d at 1170-71. Accordingly, if plaintiff's version of events is correct and defendants Sandy and Cruzen falsified the contents of their reports and issued him a false rules violation in retaliation for plaintiff's complaints against Sandy, then they would have known that their conduct was impermissible. With respect to the incident reports, which defendants assert they were required to file, it is the falsification of the contents of the reports, not the filing of the reports themselves, which constitutes retaliatory conduct.

        H.    Conclusion

Summary judgment should be granted for Lahey, Shadday, Swarthout, DeStefano, and Hutcheson on all claims against them and for Austin on the excessive use of force claim. The motions should otherwise be denied.

VIII.   Motion to Dismiss

Since the undersigned recommends granting the motion for summary judgment as to the claims against defendants Hutcheson, DeStefano, and Lahey, it declines to address defendants' motion to dismiss and recommends that the motion be denied as moot.

IX.   Summary

Defendants' objections to plaintiff's evidence are mostly overruled.

Defendants' motions for summary judgment should be granted in part and denied in part. Summary judgment should be granted for Hutcheson and DeStefano because plaintiff has not shown that either of these defendants violated his constitutional rights. Summary judgment should also be granted for Lahey, Shadday, and Swarthout because plaintiff did not explain how he was improperly prevented from filing a third-level grievance about his claims against these defendants. Because summary judgment should be granted for Hutcheson, DeStefano, and Lahey, their motion to dismiss should be denied as moot.

The excessive use of force claim against Austin should be dismissed because plaintiff has

35

not shown that Austin pointing a rifle at him during the incident with the other defendants was malicious or sadistic or out of proportion to what was happening.  Summary judgment on the excessive force claims against Lavergne, Lavagnino, Cobian, Cruzen, and Sandy should be denied because of the conflicting evidence about plaintiff's level of resistance and the level of force used by defendants.  The failure to protect claims against Lavergne, Lavagnino, Cobian, Cruzen, Sandy, and Austin should not be dismissed because if excessive force was used, there was also a failure to protect.  Summary judgment on the assault, battery, and intentional infliction of emotional distress claims against Cruzen and Sandy should be denied because there are too many disputed facts regarding what actually took place on June 22, 2012.  Summary judgment on the retaliation claims against Cruzen and Sandy should also be denied because there is a factual dispute as to whether the reports were falsified.  Because of the disputes of fact, defendants should not be granted summary judgment on the ground of qualified immunity.

Defendants Lavergne, Lavagnino, Cobian, and Austin did not move to have the state tort claims or the retaliation claims dismissed, so those claims will go forward against them.

IT IS HEREBY RECOMMENDED that:

1.  Defendant Sandy's motion for summary judgment (ECF No. 164) be denied.

2.  Defendant Cruzen's motion for summary judgment (ECF No. 165) be denied.

3.  Defendants Austin, Cobian, DeStefano, Hutcheson, Lahey, Lavagnino, Lavergne, Shadday, and Swarthout's motion for summary judgment (ECF No. 166) be granted in part and denied in part as follows:

a.  Granted as to Lahey, Shadday, and Swarthout on the ground that plaintiff failed to exhaust his administrative remedies.  The claims against these defendants be dismissed without prejudice.

b.  Granted as to all claims against Hutcheson and Destefano and as to the excessive force claim against Austin.  These claims be dismissed with prejudice.

c.  Denied as to all other claims.

4.  Defendants DeStefano, Hutcheson, and Lahey's motion to dismiss (ECF No. 166) be denied as moot.

5.  This case proceed as follows:

      a.  Against Sandy, Cruzen, Cobian, Lavagnino, and Lavergne for excessive use of force.

      b.  Against Sandy, Cruzen, Cobian, Lavagnino, Lavergne, and Austin on the claims for failure to protect, assault, battery, intentional infliction of emotional distress, and retaliation.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 26, 2017

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE